[Cite as *In re R.H.B.*, 2016-Ohio-729.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK COUNTY**

| | | |
|---|---|---|
| IN THE MATTER OF: | : | Appellate Case Nos. 2015-CA-12 |
| | : | 2015-CA-14 |
| R.H.B., L.M.B, AND L.M.B. | : | |
| | : | Trial Court Case Nos. 2014-542 |
| | : | 2014-543 |
| | : | 2014-544 |
| | : | |
| | : | (Civil/Domestic Relations Appeal |
| | : | From Common Pleas Court) |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 26th day of February, 2016.

. . . . . . . . . .

RYAN A. SAUNDERS, Atty. Reg. No. 0091678, Clark County Prosecutor's Office, 50 East Columbia Street, Springfield, Ohio 45502
      Attorney for Appellee, Clark County Dept. Of Job & Family Services

JENNIFER D. BRUMBY, Atty. Reg. No. 0076440, Freund, Freeze & Arnold, Fifth-Third Center, 1 South Main Street, Suite 1800, Dayton, Ohio 45402
      Attorney for Mother, J.B.

JENNIFER S. GETTY, Atty. Reg. No. 0074317, The Law Office of Jennifer S. Getty, LLC, 7501 Paragon Road, Dayton, Ohio 45459
      Attorney for Father, R.H.

. . . . . . . . . . . .

HALL, J.

{¶ 1} In this consolidated appeal, Mother appeals the trial court's order awarding

legal custody of two of her children to their paternal aunt and appeals the order awarding legal custody of another one of her children to the child's father. Finding no error in either order, we affirm.

## I. Procedural Background

{¶ 2} Mother has five children by three different fathers. The youngest three are the subjects of this appeal—two-year-old twins and baby "Regan."[1] In April 2014, all of the children were removed from Mother's home when she was arrested and charged with endangering children. In May, Mother pleaded guilty to this charge and a prior charge of assault. Her children were found to be dependent, under R.C. 2151.04(C). Mother went to jail, and the children were placed in temporary legal custody. The twins were placed with their paternal aunt (hereinafter "Aunt"), and Regan was placed with her father.

{¶ 3} The Clark County Department of Job and Family Services (CCDJFS) filed a motion in September 2014 to modify the order of temporary legal custody to legal custody with the current temporary legal custodians. Mother contested the motion, but the temporary legal custodians and the children's guardian ad litem (GAL) supported the modification. A two-day hearing was held in December 2014 that was attended by, among others, Mother and her counsel, Father and his counsel, and the GAL. A number of witnesses testified, including Mother, Father, and Aunt.

{¶ 4} The trial court granted the CCDJFS's motion in January 2015 and awarded legal custody of the twins to Aunt and legal custody of Regan to Father.

{¶ 5} Mother appealed.

---

[1] For clarity, we use the pseudonym "Regan" to refer to R.H.B., a minor child. There is no need to refer to either of the other two minor children individually, so we refer to L.M.B. and L.M.B. as simply "the twins."

## II. Analysis

{¶ 6} The sole assignment of error alleges that the trial court erred by awarding legal custody of the three children to others. Mother contends that the trial court's decision is against the weight of the evidence and is not in the children's best interest.

{¶ 7} A court may award legal custody of a dependent child to a parent or to any other person who asks for legal custody or is proposed as a legal custodian. R.C. 2151.353(A)(3). In making this custody decision, "the best interest of the child is the court's primary consideration." *In re L.C.*, 2d Dist. Clark No. 2010 CA 90, 2011-Ohio-2066, ¶ 13. In determining the best interest of a child, "R.C. 3109.04(F)(1) requires the trial court to consider all relevant factors * * *. These factors include, but are not limited to: the wishes of the parents; the child's interactions and interrelationships with parents, siblings, and other persons who may significantly affect the child's best interest; the child's adjustment to home, school and community; and the mental and physical health of all persons involved in the situation." *In re J.W.*, 2d Dist. Greene No. 2009 CA 8, 2009-Ohio-4605, ¶ 15. The trial court here found the following facts.

{¶ 8} Mother was unmarried at the time of the hearing and was not married when she gave birth to each of the children. Since their births, Mother has been the children's legal custodian. But the children have not spent much time with her. The oldest two children have lived with their father for significant periods of time. The twins have spent much of their lives—likely more than half—with other people, primarily their paternal aunt. Regan has spent almost her entire life with her father.

{¶ 9} Mother reluctantly admitted that Aunt and Father do a good job caring for the

children. Mother acknowledged that, before the children were removed, she would ask Father and Aunt to care for them, often leaving the children for longer than she had requested. Mother apparently felt so comfortable with their care that she would frequently go days or weeks without asking for the children to come home. At the time of the dispositional hearing, Mother was in jail, where she had spent most of her time since the children were removed from her home.

{¶ 10} Mother admitted that she was an alcoholic. She admitted that her addiction had significantly and detrimentally affected her care for the children. She was released from jail to attend an in-patient drug and alcohol treatment program at the Women's Recovery Center in Xenia, Ohio. But she was kicked out for violating the program's rules, which the court found she did knowingly and knowing that expulsion would be the consequence for rule violations. Mother returned to jail, where she remained at the time of the hearing, for at least another month.

{¶ 11} Mother was out of jail for a brief time after the children had been removed, but she did not request or obtain any significant visitation with them. Mother had very little contact with the children during the eight to ten months before the hearing, and had gone for more than 90 days without visiting all of them. Mother said at the hearing that she was interested in being the children's legal custodian, and the court said that she appeared to have some interest in their well-being. But ultimately, the court found that Mother was not particularly credible or involved. She appeared to be more interested, said the court, in getting out of jail than hearing about her children. She never tried to convince the court not to grant the custody motion. The court said that it seemed several times as if she was on the verge of admitting that the children should stay where they are. The court found

that Mother never expressed a strong emotional desire to be with her children nor exhibited the empathy, love, and concern for them that one would expect from a loving and concerned parent. The court said that Mother was either unable or unwilling to change her situation in order to get her children back.

{¶ 12} Before she went to jail, Mother had great difficulty providing for the children's needs. The court said that she did not show that she can hold a job. She subsisted on government benefits, depending on the aid of various governmental programs just to meet the children's minimum needs. The court said that Mother is now, and for the next year, ineligible for monetary government benefits because she committed welfare fraud. There is no indication, said the court, that she can meet her own needs let alone the needs of her children without help. The court also noted that Mother suffers from an adjustment disorder and panic problems but has failed to seek the necessary care. Right now, said the court, she has no home, no job, and no benefits. "It is unlikely that she will land on her feet if her past behavior is the best indicator of her future behavior." *Judgment Entry*, 3 (Jan. 13, 2015).

{¶ 13} In its decision on Regan's custody, the court found that Regan's father lives in Springfield, Ohio, with his girlfriend of eight years, her child, and their two children together. Father is an appropriate custodian and can meet Regan's needs. The court noted that Regan has spent virtually her entire life with Father, who was given temporary legal custody shortly after her birth. Regan does not know her mother, said the court, as Mother has been in jail or in a residential drug and alcohol treatment during most of the child's life. Father provides Regan a home that is appropriate in every way, offering routine, stability, predictability, and accountability. His girlfriend works full-time outside the

home, and he is the caregiver. Father has no current problems with drugs or alcohol, no mental-health problems, no instances of violent or criminal behavior. He has family support for himself and the child. The court found that Father is bright and capable and that he asked to be Regan's custodian. "When one contrasts his abilities and care for the child since birth, with that of a mother that has had almost no contact with the child since birth, it is an easy choice to make." *Judgment Entry*, 4 (Jan. 13, 2015) (Trial Court Case No. 2014-542).

{¶ 14} The trial court found that it is clearly in Regan's best interest to be placed in Father's custody. The court noted that she has no relationship with her siblings or mother, and that she has adjusted to Father's home, community, and family. Father is mentally and physically healthy and able to help Regan achieve the same good health and good development. He has a respectful relationship with Mother, and Mother acknowledges that he is doing a good job with Regan. Also, the GAL recommended that the court award Father legal custody of Regan. Perhaps most tellingly, Mother "acknowledged in open court that the child would be best served with legal custody being granted to the father * * *." *Id.*

{¶ 15} In its decision on the twins' custody, the court said that the twins' paternal aunt asked to be their legal custodian and that they have been living with her since April 2014. The court found that Aunt is committed and quite capable. She is employed and supplements her income with some governmental benefits. Aunt is a single mother with a six- and seven-year-old of her own. The court said that her concern for the children along with appropriate child care allows her to meet the children's needs. The twins are well-cared for in her home. And Aunt can get along with Mother and can cooperate with

her for purposes of visitation. The court noted that the GAL recommended that the twins would be best served by staying with Aunt. "It would not be appropriate," said the court, "to interrupt that situation, when the father has no interest in the children and the mother is not able to meet the needs of the children." *Judgment Entry*, 4 (Jan. 13, 2015) (Trial Court Case Nos. 2014-543, 2014-544).[2]

{¶ 16} Citing the factors in R.C. 3109.04(F), the trial court found that it is clearly in the best interest of the children to live in the homes of their respective temporary legal custodians, who can offer the children stability, safety, love, and support. Mother disagrees. She does not dispute any of the trial court's findings of fact. Rather, she contends that the custody decisions are not in the children's best interest and are against the manifest weight of the evidence.

{¶ 17} Mother points out that she completed a mental-health assessment as required by her case plan and that while she was in jail she attended group meetings and AA meetings weekly. Also, says Mother, during her final period of incarceration she sought mental health services. Mother testified that when she is released from jail she will get a job and seek substance-abuse treatment and mental-health services. She said that she plans to apply for a job at a staffing company. She also plans to attend group sessions for substance abuse. Mother said that she will engage in weekly counseling and will seek treatment from a psychiatrist and take her medicine. She said that she will live in her sister's home. The sister testified and said that Mother could live with her in her three-bedroom home. But the sister also testified that she has her own case plan and is

---

[2] The court found that the twins' father plainly wants nothing to do with them. He has had practically nothing to do with them since they were born. And he did not appear at the hearing.

undergoing intensive outpatient treatment for drug problems.

{¶ 18} Mother contends that the successful completion of a case plan is not dispositive of the issue of reunification, that it is only one factor for the court to consider. Mother says that at the time of the dispositional hearing her open case plan was less than a year old, and because she spent a significant amount of time in jail she "never really got the chance to do her case plan," (Day 2 Tr. 57). Mother testified that she wants to work on and complete her plan objectives so that her children can be returned to her. She says that the fact that she entered inpatient treatment shows her attempt to remedy the problems that caused the children to be removed. She says that her commitment to mental-health services and inpatient treatment and her strong desire to be with her children all show her commitment to her children.

{¶ 19} In a legal custody dispute, as opposed to a more drastic termination of parental rights, a court must find by a preponderance of the evidence that its decision is in the child's best interest. *In re A.W.*, 2d Dist. Montgomery No. 21309, 2006-Ohio-2103, ¶ 6. "Preponderance of the evidence simply means 'evidence which is of a greater weight or more convincing than the evidence which is offered in opposition to it.' " *In re Starks*, 2d Dist. Darke No. 1646, 2005-Ohio-1912, ¶ 15, quoting *Black's Law Dictionary* 1182 (6th Ed.1998). The standard that a reviewing court uses to evaluate a manifest-weight challenge is familiar: " 'The court * * * weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered.' " *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting *State v. Martin*, 20

Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983); *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 20 (saying that this standard applies in civil cases). "A finding of an error in law is a legitimate ground for reversal, but a difference of opinion on credibility of witnesses and evidence is not." *Seasons Coal Co. v. City of Cleveland*, 10 Ohio St.3d 77, 81, 461 N.E.2d 1273 (1984).

{¶ 20} Here, the weight of the evidence presented at the dispositional hearing plainly supports the trial court's decisions. The trial court's decisions are not only based on Mother's failure to complete her case plan. The decisions are based on all the evidence showing that it is in the children's best interest to remain with Father and Aunt. As the trial court said, "The Court does not know where the mother would live due to her drug and alcohol use and mental health concerns. The mother needs to help herself before she can help her children. She has failed to follow through with the rules of drug and alcohol treatment, causing the Court to question whether she would honor and facilitate court approved parenting time. * * * From all indications, the children are well-served and would be best served where they currently reside." *Judgment Entry*, 3 (Jan. 13, 2015).

### III. Conclusion

{¶ 21} The sole assignment of error is overruled. Therefore the trial court's judgment is affirmed.

. . . . . . . . . . . .

DONOVAN, P.J., and FROELICH, J., concur.

Copies mailed to:

Ryan A. Saunders
Jennifer S. Getty
Jennifer D. Brumby

Christopher Smith, GAL
D.J.
J.F.
M.J.
Hon. Joseph N. Monnin