[Cite as *In re I.R.*, 2016-Ohio-2919.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
|---|---|---|---|
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

IN RE: I.R.

C.A. No.     27775

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.     DN 14-03-0185

DECISION AND JOURNAL ENTRY

Dated: May 11, 2016

WHITMORE, Judge.

{¶1}  Appellant, Betty H. has appealed from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that placed her minor child, I.R., in the legal custody of the child's father, Ty R.  This Court affirms.

I

{¶2}  Betty H. ("Mother") and Ty R. ("Father") are the unmarried parents of I.R., born June 2, 2007.  I.R. was residing with Mother when law enforcement officers stopped Mother for a traffic stop on March 26, 2014.  Police took Mother into custody due to outstanding arrest warrants and invoked Juv.R. 6 for I.R., who was a passenger in the vehicle at the time.

{¶3}  On the following day, Summit County Children Services Board ("CSB") filed a dependency complaint in juvenile court.  The complaint alleged that Mother had multiple drivers' licenses, criminal tools, and various stolen items in the car, that she had outstanding criminal charges from multiple jurisdictions, and that she was on probation through Stark

County. The complaint also alleged that Mother and child "had been going from place to place and the child has not had any stability." At the shelter care hearing, I.R. was placed in the emergency temporary custody of Father with an order of protective supervision to CSB.

{¶4} At the adjudicatory hearing, both parents expressed agreement with the allegations and facts in the complaint. Accordingly, the trial court found I.R. to be dependent as alleged. At disposition, the parents agreed that I.R. should remain in the temporary custody of Father with protective supervision in CSB. The parents also agreed to the adoption of the proposed case plan. The case plan addressed concerns that Mother failed to protect her daughter by staying out of jail, that she abuses marijuana and prescription medications, that her mental health diagnoses have gone untreated, and that she lacks stable income and housing. Therefore, the case plan required Mother to: (1) obey all laws and rules of probation; (2) complete a substance abuse assessment, follow all recommendations, and complete random drug screens; and (3) attend counseling and follow all recommendations. Additionally, the child's caregiver was required to meet the child's basic needs.

{¶5} On September 23, 2014, CSB moved the juvenile court to change the child's disposition from temporary to legal custody with Father. In so doing, the agency asserted that Father has appropriate housing and employment and that he is meeting the needs of the child. At the request of the guardian ad litem, an attorney was appointed for I.R. because the child's wish to be returned to Mother conflicted with his own recommendation. Following a hearing on the motion, the magistrate found that it was in the best interest of the child to be placed in Father's legal custody. Mother was granted visitation for a minimum of two hours per week and other times as agreed by the parties.

**{¶6}** Thereupon, Mother objected to the magistrate's decision on two grounds. She claimed that the decision granting legal custody to Father was contrary to the manifest weight of the evidence and also that the decision was unjust, unreasonable, and against the best interest of the child because Father was not present and available for cross-examination at the hearing. CSB filed a response. The trial court overruled Mother's objections and adopted the decision of the magistrate. Mother has appealed the judgment of the trial court and assigned two errors for review.

## II

### Assignment of Error Number One

THE TRIAL COURT ABUSED ITS DISCRETION IN GRANTING MOTHER MINIMAL SUPERVISED VISITATION WITH THE CHILD.

**{¶7}** On appeal, Mother has argued that the trial court abused its discretion in granting her minimal supervised visitation. This Court will not reach the merits of this challenge because Mother failed to preserve it for appellate review. Mother did not object to the portion of the magistrate's decision providing her with a minimum of two hours of visitation weekly. Because Mother failed to timely object to the issue regarding visitation in the trial court or to argue plain error on appeal, Mother has forfeited her right to assign error to this matter. *See* Juv.R. 40(D)(3)(b)(iv). *See also In re O.L.*, 9th Dist. Summit No. 24928, 2010-Ohio-878, ¶ 24. Mother's first assignment of error is overruled.

### Assignment of Error Number Two

THE TRIAL COURT'S FINDING THAT LEGAL CUSTODY TO FATHER WAS IN THE BEST INTEREST OF THE CHILD IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

**{¶8}** Mother has asserted that the trial court's finding that legal custody with Father was in the best interest of the child is against the manifest weight of the evidence. Generally,

this Court reviews a trial court's action with respect to a magistrate's decision for an abuse of discretion. *Fields v. Cloyd*, 9th Dist. Summit No. 24150, 2008–Ohio–5232, ¶ 9. "In so doing, we consider the trial court's action with reference to the nature of the underlying matter." *Tabatabai v. Tabatabai*, 9th Dist. Medina No. 08CA0049-M, 2009-Ohio-3139, ¶ 18. We likewise review a juvenile court's award of legal custody for an abuse of discretion. *In re L.B-R.*, 9th Dist. No. 27201, 2015-Ohio-2622, ¶ 5. An abuse of discretion implies that a trial court was unreasonable, arbitrary, or unconscionable in its judgment. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

**{¶9}** Following an adjudication of neglect, dependency, or abuse, the juvenile court's determination of whether to place a child in the legal custody of a parent or a relative is based solely on the best interest of the child. *See In re K.H.*, 9th Dist. Summit No. 27952, 2016-Ohio-1330, ¶ 12. "Although there is no specific test or set of criteria set forth in the statutory scheme, courts agree that the trial court must base its decision [regarding legal custody] on the best interest of the child." *In re N.P.*, 9th Dist. Summit No. 21707, 2004-Ohio-110, ¶ 23, citing *In re Fulton*, 12th Dist. Butler No. CA2002-09-236, 2003-Ohio-5984, ¶ 11. In making this determination, "courts have looked to the best interest factors of R.C. 2151.414(D), R.C. 3109.04(F)(1), a combination of the two, or general notions of what should be considered regarding the best interests of the children." (Citations omitted.) *In re A.K.*, 9th Dist. Summit No. 26291, 2012-Ohio-4430, ¶ 25.

**{¶10}** The evidence before the trial court fails to demonstrate that it abused its discretion in granting legal custody of I.R. to Father. The court heard testimony from the CSB caseworker, the child's maternal grandmother ("Grandmother"), and the child's guardian ad litem as well as a report from the attorney appointed to represent the wishes of the child regarding her placement.

{¶11} Absent any evidence to the contrary, we presume that I.R. resided with Mother until the incident that resulted in her removal. The testimony indicates that Mother was incarcerated from the time of her arrest on March 26, 2014 until her release on September 9, 2014. While Mother was incarcerated, I.R. resided with Father, and she remained in his care thereafter until the October 27, 2014 legal custody hearing.

{¶12} Father's involvement with I.R. prior to this case was sporadic. According to Father, his lack of involvement was because Mother prevented him from visiting and she, in fact, told I.R. he had died, while according to Mother, Father chose not to be involved. Since I.R. was placed with Father, the evidence indicates that Father has satisfied his obligation to meet I.R.'s needs. He has tended to I.R.'s medical needs, including her ongoing ear issues, and has ensured that she regularly attends school. The caseworker stated that I.R. is "extremely attached" to Father and that his is a "safe home." Father is married, and he and his wife have a school-aged son together. The caseworker stated that I.R. gets along well with the step-mother and her half-brother. A background check on the step-mother revealed no concerns, and she has not expressed any opposition to having I.R. in the home. Father is employed full-time and provides for I.R.'s supervision as needed with a sitter and after-school programs. The caseworker reported that I.R. is always laughing and smiling when she visits the child in the home, and she talks about family trips and activities. The caseworker stated that the home is appropriate, always "clean and tidy," and I.R. has her own room. No safety hazards were observed in the home.

{¶13} I.R. was said by Father to have a strong relationship with Grandmother. She has visited Grandmother on weekends while she has been in Father's custody. She also visits an aunt. The trial court found that I.R. was not able to visit Grandmother while she lived with

Mother due to Mother's "violent and threatening behavior" towards Grandmother. Grandmother testified that I.R. told her that she is very happy in Father's home.

{¶14} Grandmother also testified about her relationship with her daughter, I.R.'s mother. She testified that she loves her daughter, but she is also ashamed of her. Grandmother was and continues to be scared of Mother. She does not trust her and says Mother is not truthful. She has two grandsons and one of their wives staying with her in her home. She is afraid Mother would inflict physical harm on her if she left her home.

{¶15} Grandmother explained that she had been victimized by Mother in 2012 and, as a result, a protection order was put in place against Mother. Through that order, Mother was barred, inter alia, from harming, threatening, harassing, or communicating with Grandmother. Within weeks of Mother's release from jail, however, Mother telephoned Grandmother numerous times and demanded the rest of "her stuff." According to Grandmother, Mother said she would make sure she got her things or "I'll fuck you up in the face." Grandmother contacted the police and a warrant was issued for Mother's arrest. A hearing on the matter was set for two days after the legal custody hearing.

{¶16} On cross-examination, Grandmother explained that she did not have any of Mother's possessions. She said that Mother took most of her things with her, though she left some possessions at Grandmother's home, when Mother had been evicted and "when she moved out, when I threw her out." Grandmother testified that whatever Mother left behind was put into storage "way before" Mother was incarcerated in March 2014. Grandmother explained that she gave money to Mother a couple times so that she could retrieve her things from storage, but Mother used the money in other ways. The items were apparently auctioned off in August 2014.

{¶17} Finally, Grandmother testified that she supports an award of custody to Father. She explained that his home is stable and that Father has a good job, a wonderful wife, and a son who is a step-brother to I.R. She appreciates that I.R. gets three meals a day in the home, has the same bed to sleep in every night, and goes to the same school all the time.

{¶18} The caseworker testified about I.R.'s relationship with Mother. I.R. was not able to visit Mother while she was in jail. Since Mother's release, the caseworker stated that visits between them have gone well. They share a bond and appear to love each other. There were no concerns with their interactions.

{¶19} At the same time, the caseworker reported that I.R. had missed "a significant amount" of school while she was in Mother's care. The caseworker is uncertain how Mother supports herself, as Mother is not employed, and the caseworker is not aware that Mother receives any public benefits. Mother is currently living with a friend. The guardian ad litem indicated that Mother reported that she is estranged from most of her family, especially her mother and her aunt, and has no one else to help her.

{¶20} The guardian ad litem recommends granting legal custody to Father as being in the child's best interest. He stated that he has seen a marked improvement in I.R. while she has been in Father's custody. I.R. has "appeared to blossom," her medical conditions have improved, and her performance and interactions with others at school have been excellent. Previously, I.R. was "just doing okay" in school, but now she likes to talk about school and takes pride in the fact that she is doing well. The guardian ad litem described Father as very attentive and caring. He believes I.R. is bonded to Father and the others in the home. He explained that Father encourages I.R. to visit with her maternal relatives. He stated that the home is well suited to raising a child, and he has no concerns about I.R. being with Father. Father told the guardian

ad litem that he would be willing to allow I.R. to spend a weekend with Mother as long as all her warrants and court actions were cleared up. He explained that he did not want Mother to be arrested while she was watching I.R.

{¶21} By way of comparison, the guardian ad litem indicated that there is ambiguity in Mother's situation. The guardian expressed concern with Mother's ongoing criminal matters and whether she might be incarcerated again. She has not fully addressed her case plan objectives, and she has refused to accept responsibility for her issues. He does not believe reunification with Mother could occur within a reasonable period of time. He also expressed concern with Mother's continuing need for stable employment, stable housing, and to remain law abiding.

{¶22} As far as Mother's compliance with her case plan, Mother told the caseworker that she had successfully completed a substance abuse treatment program prior to this case. Mother also claimed that she took classes in domestic violence, parenting, and substance abuse while she was incarcerated during the present case. She told the guardian ad litem that the classes went well, but that they were unnecessary. Since her release from jail, Mother made an appointment for a substance abuse assessment and anticipates starting mental health counseling at that time. She has done three drug screens. Two were negative and one was positive for amphetamines, which Mother claimed was a result of prescribed Adderall, but she offered no proof of a prescription. Mother still has no independent housing, no job, and no source of income.

{¶23} According to the attorney who was appointed to represent the wishes of the child, "for now, [I.R.] wants to be with father but would like to go back to mom as soon as mom has -- mom's done what she needs to do." Neither the guardian ad litem nor the attorney for I.R. could

obtain any further explanation or reasons for I.R.'s opinion despite making inquiry. I.R. also told the guardian ad litem that she was happy living with Father.

{¶24} On appeal, Mother argues that she should have been allowed additional time to work on her case plan. In support of this argument, Mother claims that "[t]he law provides a one year window before disposition must be made in dependency cases," but Mother did not make this argument below. Furthermore, she cites no authority for this proposition, and we are not aware of any such requirement. In addition, Mother claims that more time would have allowed her to make progress on her case plan. The record demonstrates, however, that Mother failed to request an extension of temporary custody while the matter was pending before the trial court, and she also failed to object to the magistrate's findings that CSB had exerted reasonable efforts to return the child and to prevent her continued removal from her home. Mother has failed to demonstrate or explain that additional time would have made a difference.

{¶25} Given the evidence presented at the hearing, the trial court reasonably concluded that it was in the best interest of I.R. to be placed in the legal custody of Father. Mother has failed to demonstrate that the trial court abused its discretion by adopting the magistrate's decision that placed the child in Father's legal custody. Mother's second assignment of error is overruled.

III

{¶26} Mother's two assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
BETH WHITMORE
FOR THE COURT


HENSAL, P. J.
CARR, J.
CONCUR.


APPEARANCES:

ANGELA M. KILLE, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.