[Cite as *In re C.N.*, 2016-Ohio-7322.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| IN RE: C.N., K.N. and K.N. | : | |
| | : | |
| | : | Appellate Case No. 27119 |
| | : | |
| | : | Trial Court Case Nos. 2013-0879, |
| | : | 2013-0880, 2013-0881 |
| | : | |
| | : | (Domestic Relations Appeal from |
| | : | Juvenile Court) |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 14th day of October, 2016.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by MEAGAN D. WOODALL, Atty. Reg. No. 0093466, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, Dayton, Ohio 45422
        Attorney for Appellee-Montgomery County Children Services

ANDREW C. SCHLUETER, Atty. Reg. No. 0086701, 5540 Far Hills Avenue, Suite 202, Dayton, Ohio 45429
        Attorney for Appellee-D.N.

AMY E. FERGUSON, Atty. Reg. No. 0088397, 130 West Second Street, Suite 1818, Dayton, Ohio 45402
        Attorney for Appellant-J.J.

. . . . . . . . . . . . .

WELBAUM, J.

{¶ 1} In this case, Appellant, J.J. ("Mother) appeals from a judgment awarding legal custody of her minor children, C.N., Ki.N., and Ka.N., to Appellee, D.N. ("Father"). In support of her appeal, Mother contends that the trial court's decision was arbitrary, unreasonable, and capricious. In addition, Mother contends that the trial court failed to properly determine the factual issues and appropriately apply the law. Finally, Mother contends that the trial court improperly applied the "best interests" standard.

{¶ 2} For the reasons discussed below, we conclude that the decision to grant legal custody to Father was not an abuse of discretion and was in the best interests of the children. Accordingly, the judgment of the trial court will be affirmed.

I.  Facts and Course of Proceedings

{¶ 3} In February 2013, Appellee, Montgomery County Children Services ("MCCS") filed neglect and dependency complaints regarding C.N., Ki.N., and Ka.N., who were ages 8, 5, and 3, respectively. According to the complaints, the incident giving rise to the filings occurred on January 25, 2013, when Mother left C.N. home alone during the day while she went to work. At the time, C.N. was suspended from school, and Mother locked him in his room by tying the door shut with an extension cord. She left him with only a box of juice, a tangerine, and a yogurt for the day, and no access to restroom facilities.

{¶ 4} On January 26, 2013, Mother met with a caseworker and admitted that she had left C.N. home alone and had locked him in his room. She stated that she was unable to find someone who could keep C.N. while he was suspended. However, she

did not ask Father for assistance. In addition, the paternal grandmother, J.G., was not employed and would have been willing to care for the child. Mother was arrested that day for child endangering. At a pre-placement hearing on January 28, 2013, Mother refused to agree to placement of the children with Father.[1] MCCS then filed the complaints for neglect and dependency, and asked the court to award temporary custody to Father.

{¶ 5} On March 4, 2013, the court ordered interim temporary custody to Father and appointed a guardian ad litem ("GAL"). After an adjudicatory hearing held on March 12, 2013, the court concluded that the allegations in the complaints were true, and adjudicated C.N. neglected and dependent. The court also found that Ki.N. and Ka.N. were dependent. A dispositional hearing was set for April 2, 2013.

{¶ 6} On April 2, 2013, the GAL filed a report, recommending that Father be given temporary custody. At the dispositional hearing on April 2, 2013, both parents were present and agreed that Father would have temporary custody. A case plan approved at the hearing required Mother to do the following: ensure that the children had age-appropriate supervision at all times; participate in a mental health assessment and follow through with recommendations; attend parenting classes; and discuss and demonstrate age-appropriate care and discipline of the children. Father was required to provide financial support and supportive services. The case plan noted that Father had expressed interest in the care and well-being of the children, and that MCCS was doing a home study.

---

[1] At the time, Mother and Father were going through a divorce and Father was living at his parents' home. This is the home where the children went when Father was awarded temporary custody, and it had ample room for Father and the children.

**{¶ 7}** The semi-annual administrative review ("SAR") filed on July 16, 2013, noted that mother had completed a parenting program at C.N.'s school, but there had been an additional referral regarding allegations of Mother's abuse of Ki.N. after the parenting classes were completed. MCCS noted that Father was meeting the basic needs of the children, and recommended that the children remain with Father for the next six months.

**{¶ 8}** In December 2013, MCCS filed a motion asking for legal custody to be granted to Mother, or in the alternative, that legal custody be granted to Father. The motion noted that both parents wanted custody, both had complied with case plan requirements, and both could provide for the children's basic needs. Subsequently, in January 2014, MCCS filed an amended motion, asking for legal custody to be granted to mother. The GAL recommended shared parenting, noting that the mother wanted custody, while Father was willing to agree to shared parenting.

**{¶ 9}** At a hearing on March 28, 2014, the parties agreed to give Mother legal custody, with MCCS retaining protective supervision. A SAR prepared on June 25, 2014, indicated that Mother was doing better with age-appropriate discipline, and that Father had visitation with the children every Wednesday and from Wednesday through Sunday every other week. The parties were complying with visitation; MCCS had protective supervision until the end of June, and would close the family's case if everything were stable.

**{¶ 10}** On February 20, 2015, MCCS filed another motion with the court, asking the court to give Father legal custody. In the motion, MCCS alleged that Mother had punched and slapped the children on December 18, 2014. On the same date, MCCS filed neglect and dependency complaints for the children, based on this incident. On

February 26, 2015, the court again granted interim temporary custody to Father, by agreement, and Mother was given supervised visitation.

{¶ 11} A GAL report filed on March 31, 2015, recommended that regardless of which parent held custody, both parents should again be required to complete a parent education program that would provide them with discipline techniques other than hitting the children. On May 1, 2015, the court filed an order concluding that the children's best interest would be served by continuing to reside with Mother, and that MCCS would retain protective supervision until March 31, 2016.

{¶ 12} According to the case plan, both parents were required to complete parenting classes on appropriate discipline for the children. Both were also required to maintain employment and stable housing, to provide financial and emotional support for the children, to meet with MCCS monthly, to allow MCCS access to the children, and to sign any required releases. Family progress was to be measured through written and verbal reports from service providers, and was to be reviewed during meetings and conferences, home visits, and case plan reviews.

{¶ 13} The MCCS caseworker, Tonya Sheets, was able to meet with Mother in April 2015, when she made an unscheduled visit. However, after that time, Sheets was unable to meet with Mother. Some appointments were made in May 2015 that Mother failed to keep. When Sheets went to Mother's house for unscheduled visits, no one was there. That happened again in June. When Sheets attempted to visit in July 2015, there was an eviction notice on the door of Mother's home. When Sheets called to verify the eviction, the landlord reported that Mother was no longer living there.

{¶ 14} Father called Sheets to report that when he went to pick the children up

from daycare, they were not there, and the daycare was under the impression that the children had moved. Sheets also attempted to call Mother, but Mother did not answer her phone. When Sheets called Mother's employer, the employer said that Mother had moved out of state for a job.

{¶ 15} Mother moved to Atlanta, Georgia, in mid to late July 2015, but did not inform either MCCS or Father of the fact that she was moving out of state with the children. At the time, Mother had not completed parenting classes, and the children were still under protective supervision.

{¶ 16} On August 26, 2015, Father filed a motion for permanent legal custody, as well as a motion for an ex parte order of interim temporary custody. MCCS had already filed a SAR on August 12, 2015, noting the details of Mother's departure from the state. The trial court granted interim temporary custody to Father, and he traveled to Georgia to attempt to pick up the children, but the Georgia court would not let him have the children. On September 15, 2015, the court again appointed a GAL.

{¶ 17} The trial court held a hearing on October 6, 2015, at which both Mother and Father appeared. At that time, the court ordered Mother to produce the children at Father's residence on or before October 9, 2015. The court also set a hearing for November 17, 2015. Mother produced the children as directed, and they remained in Father's custody pending resolution of Father's motion.

{¶ 18} On November 12, 2015, the GAL filed his report and recommendation. The GAL noted that he had interviewed and/or observed both parents, the minor children, and the MCCS caseworker. In the report, the GAL noted that the children were all happy living with Father and would rather stay with their father. In addition, the GAL

recommended that Father should be given legal custody and that mother should be afforded a parenting time schedule consisting of summer breaks from school, Christmas breaks, spring breaks, and any other parenting time the parents could agree upon.

**{¶ 19}** On November 17, 2015, the magistrate held an evidentiary hearing, during which the magistrate heard testimony from Mother, Father, and Sheets. At the hearing, Sheets indicated that Father had complied with all case plan requirements, that his home was safe and appropriate for the children, that Father and the children were well-bonded, and that MCCS had no concern about Father's judgment or ability to care for the children. Sheets further stated that Mother had failed to complete the parenting classes, so the agency still had concerns about appropriate physical discipline. The agency also had not been able to verify Mother's home or employment, or that the children's needs were being met while in Mother's care. In addition, Sheets was concerned about mother's judgment regarding physical discipline and removing the children from the state without notifying the agency or Father, and without giving the children an opportunity to say goodbye to Father. Finally, Sheets stated that it was in the children's best interest for Father to be granted legal custody.

**{¶ 20}** Father testified as noted above, and added that all the children's relatives on both sides were located in Dayton, Ohio. He also outlined various ways in which he and the children interacted, as well as their living conditions. Furthermore, he stated that he objected to Mother's discipline, because she was aggressive with the children, yelled a lot, and hit the children.

**{¶ 21}** Mother expressed concern over the fact that the children had ringworm when they were returned to her in 2014, and that Ka.N. had blisters in her genital area

when she was returned in 2015, due to allegedly wetting herself and walking around in wet underwear. However, Mother did not provide the court with any medical records. Mother also indicated that she left Ohio to take a better job. She claimed she did not know that moving to Georgia while under protective supervision was wrong, and was unaware of the related consequences or ramifications. She testified that she had wanted Father to engage in mediation relating to visitation, and had contacted a mediation center to arrange for mediation. However, any mediation never occurred, and Mother left for Georgia anyway. It is clear that Father was never told prior to Mother's departure that she was leaving the state, or that any proposed mediation had to do with her departure.

{¶ 22} After hearing the evidence, the magistrate concluded that granting legal custody of the children to Father was in the children's best interests. Mother filed objections to the decision, and filed supplemental objections after the transcript was prepared. In April 2016, the trial court overruled the objections and granted legal custody to Father. Mother was granted parenting time during spring and summer breaks, and on alternating Christmas and Thanksgiving holidays. Mother now appeals from the trial court's judgment.

II. Did the Trial Court Abuse Its Discretion in Granting Father Custody?

{¶ 23} Mother's First Assignment of Error states that:

The Trial Court's Decision in Granting Father Custody Was Arbitrary, Unreasonable, and Capricious.

{¶ 24} Under this assignment of error, Mother contends that the trial court abused its discretion by focusing almost solely on Mother's conduct in moving out of state.

According to Mother, the trial court improperly ignored the fact that she moved to benefit the children because of a pay increase and educational benefits in her new job, and the fact that the children had adjusted to their new home. Mother also argues that she attempted to mediate the visitation plan before moving.

{¶ 25} In this case, C.N. was adjudicated a neglected and dependent child, and Ki.N. and Ka.N. were adjudicated dependent children. Under R.C. 2151.353(A)(3), when a child has been adjudicated abused, neglected or dependent, the juvenile court may award legal custody "to either parent or to any other person who, prior to the dispositional hearing, files a motion requesting legal custody of the child or is identified as a proposed legal custodian in a complaint or motion filed prior to the dispositional hearing by any party to the proceedings."

{¶ 26} We have said that when juvenile courts make custody decisions under R.C. 2151.353, they "must do so in accordance with the 'best interest of the child' standard set forth in R.C. 3109.04(F)(1)." *In re D.S.*, 2d Dist. Clark No. 2013 CA 51, 2014-Ohio-2444, ¶ 9, citing *In re Poling*, 64 Ohio St.3d 211, 594 N.E.2d 589 (1992), and R.C. 2151.23(F)(1). "The factors a court must consider in determining a child's best interest include such things as the parents' wishes; the child's wishes, if the court has interviewed the child; the child's interaction with parents, siblings, and others who may significantly affect the child's best interests; adjustment of the child to home, school, and community; and the mental and physical health of all involved persons." *Id.*, citing R.C. 3109.04(F)(1)(c).

{¶ 27} "In a legal custody dispute, as opposed to a more drastic termination of parental rights, a court must find by a preponderance of the evidence that its decision is in the child's best interest." *In re R.H.B.*, 2d Dist. Clark No. 2015-CA-12, 2016-Ohio-729,

¶ 19, citing *In re A.W.*, 2d Dist. Montgomery No. 21309, 2006-Ohio-2103, ¶ 6. "Preponderance of the evidence simply means 'evidence which is of a greater weight or more convincing than the evidence which is offered in opposition to it.' " *In re Starks*, 2d Dist. Darke No. 1646, 2005-Ohio-1912, ¶ 15, quoting Black's Law Dictionary 1182 (6th Ed.1998).

{¶ 28} Trial courts have substantial discretion in making custody decisions, and we review the court's decision for abuse of discretion. *In re M.W.*, 2d Dist. Montgomery No. 26912, 2016-Ohio-4891, ¶ 58. " 'Abuse of discretion' has been defined as an attitude that is unreasonable, arbitrary, or unconscionable." (Citation omitted.) *AAAA Enterprises, Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990). In this regard, the Supreme Court of Ohio has stressed that "most instances of abuse of discretion will result in decisions that are simply unreasonable." *Id.* The court has also said that "[a] decision is unreasonable if there is no sound reasoning process that would support that decision." *Id.*

{¶ 29} After reviewing the record and the trial court's decision, we find that the court's decision is supported by a sound reasoning process and by a preponderance of the evidence. In this regard, the trial court separately considered the pertinent statutory factors in R.C. 3109.04(F)(1) relating to the children's best interest.[2] In this regard, the court first observed that both parents wanted legal custody, and outlined their respective positions. R.C. 3109.04(F)(1)(a). The court then noted that the children were well-bonded to Father, were doing well in his care, and loved him – the latter point having been

---

[2] Some factors did not apply. For example, R.C. 3109.04(F)(1)(g) relates to whether either parent has failed to make child support payments. There was no evidence that either parent failed to comply with any ordered support payments.

corroborated by Mother in her testimony.   R.C. 3109.04(F)(1)(c).   Regarding the children's adjustment to their home, school, and community, the court commented that the children were well-adjusted in Father's home and had lived in Dayton, Ohio, all their lives, other than the few months they spent in Georgia.   In addition, most of the children's relatives lived in the Dayton area.   R.C. 3109.04(F)(1)(d).

{¶ 30} The court further noted that the children had been re-enrolled in the same school and daycare they had attended before leaving for Georgia, and were happy there. Finally, the court did discuss Mother's position that the children were happy and active in Georgia.   However, it is clear that this would not outweigh the evidence indicating that the children's community, school, and family ties had consistently been in Dayton, Ohio, where Father and their relatives lived.   Moreover, the court noted that Mother's boyfriend had moved to Georgia and was staying with Mother – but Mother had not informed MCCS of this fact.

{¶ 31} Regarding R.C. 3109.04(F)(1)(f), the court specifically found that Father was "[t]he parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights."   The record supports this finding.   Mother removed the children from the state without informing Father or MCCS, and clearly interfered with Father's visitation rights.   Father and MCCS did not even know where Mother was.   By Mother's own admission, she knew at the beginning of July 2015 that she had a definite start date of July 27, 2015, for her employment in Georgia.   Despite these facts, Mother concealed her plans from Father and MCCS.   She had more than ample time to inform them.

{¶ 32} When testifying, Mother claimed that she was unaware that she had done

something wrong, and was unaware of the ramifications of her actions. However, Mother had been involved with MCCS for more than two years before she left, and knew that MCCS had protective supervision until March 2016. She also knew that she had case plan requirements that had not been completed. Yet, she made no attempt to contact MCCS or to inquire about the propriety of her actions. In contrast, there is no indication that Father ever interfered with Mother's visitation rights.

{¶ 33} The trial court also placed reliance on R.C. 3109.04(F)(1)(h), which concerns "whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of an adjudication * * *." The court noted that Mother had been arrested for child endangerment in January 2013, and that as a result of the incident, C.N. was adjudicated dependent and neglected pursuant to a Magistrate's Order that was filed on March 20, 2013. This is a correct statement and is supported by the record.

{¶ 34} Regarding R.C. 3109.04(F)(1)(j), the court noted that Mother had established residence in Georgia, and that MCCS was concerned about the move because it had been granted protective supervision on May 1, 2015. The court noted it shared the agency's concern. Specifically, MCCS was supposed to be able to access the children to make sure they were safe, but Mother failed to provide the agency with access to the children after April 2015. Again, Mother also left the State without informing MCCS or Father. As noted, the record supports these findings.

{¶ 35} Furthermore, R.C. 3109.04(C) provides that "[i]f the court determines * * * that either parent previously has been determined to be the perpetrator of the neglectful

act that is the basis of an adjudication that a child is a neglected child, or that there is reason to believe that either parent has acted in a manner resulting in a child being a neglected child, the court shall consider that fact against naming that parent the residential parent." Consequently, Mother's action in leaving the state was not the only factor the trial court considered.

{¶ 36} After discussing the factors in R.C. 3109.04(F)(1), the trial court went on to discuss the best interest factors in R.C. 2151.414(D). Among other things, the court noted that the children wanted to stay in Ohio with Father, that the children had been adjudicated dependent and, with respect to C.N., neglected, and that Mother had not completed her case plan objectives. The court discussed each case plan objective in detail and how Mother failed to complete the objective. Additionally, the court discussed Father's objectives, and observed that Father had completed his objectives. The record supports these conclusions.

{¶ 37} Accordingly, contrary to Mother's contentions, the trial court did not focus solely on the fact that she moved out of state, and did not ignore her testimony that she moved for a better job. Even if that were true, the court did not act unreasonably in being concerned over Mother's actions and failure to complete her case plan, which was designed to make sure that the children were safe.

{¶ 38} Based on the preceding discussion, the First Assignment of Error is overruled.

III. Did the Court Fail to Properly Determine Facts
and to Appropriately Apply the Law?

**{¶ 39}** Mother's Second Assignment of Error states that:

The Trial Court Failed to Properly Determine the Factual Issues and Appropriately Apply the Law.

**{¶ 40}** Under this assignment of error, Mother argues that the trial court failed to acknowledge her progress in fulfilling her case plan. In this regard, Mother notes that the parenting program she was referred to had not started by the time she moved to Georgia, and that no other referrals were made. Mother further indicates that the immediacy being placed on these classes is questionable. Moreover, Mother comments that she always had income and stable housing, and that she moved to Georgia for a new job that provided more opportunities. Mother argues that there was no testimony that she was not able to provide for her children's basic needs.

**{¶ 41}** Basic needs do not involve just income and housing. The reason the children were before the court to begin with was Mother's poor judgment in locking her eight-year old son in a room, with minimal food and no toilet facilities, and leaving him alone for the day while she went to work. Even after Mother completed an initial parenting class, problems persisted with harsh physical discipline, including allegations of physical abuse in July 2013 and December 2014. When C.N. was interviewed by MCCS regarding the 2014 incident, he "consistently reported that Mother had punched him in the face when he refused to take his 'beatdown.' " *See* February 20, 2015 MCCS Motion and Affidavit for Legal Custody to Father, p. 2. The affidavit filed with the motion also indicates that Mother had admitted that she hit C.N. and his siblings while disciplining them.

**{¶ 42}** The GAL expressed some concern about physical discipline by both parents

in a March 2015 report to the court. Unlike Mother, however, Father completed additional parenting classes, and MCCS had no subsequent concerns with his care for the children. As was noted above, Mother failed to grant MCCS appropriate access to the children for checks on their safety, and instead left the state without notifying MCCS or Father. Again, this demonstrated a lack of judgment, as well as a lack of concern for the children's well-being and needs. Mother admitted at the custody hearing that Father loved the children and they loved him equally – yet she removed them to another state without notifying Father and without allowing the children to see him before they left.

{¶ 43} For the reasons just stated, and the reasons mentioned in our discussion of the First Assignment of Error, there is no indication that the trial court failed to properly determine facts or failed to properly apply the law. Accordingly, the Second Assignment of Error is overruled.

IV. Did the Lower Court Improperly Apply the "Best Interests" Standard?

{¶ 44} Mother's Third Assignment of Error states that:

The Lower Court Improperly Applied the "Best Interests" Standards Codified in Ohio Law.

{¶ 45} Under this assignment of error, Mother contends that the trial court improperly applied the best interests standards found in R.C. 3109.04(F)(1) and R.C. 2151.414(D). We have already found that the trial court properly considered the children's best interests. Nonetheless, Mother argues that the children's best interests are served by being with her because they have lived with her all their lives, minus one year and four months when Father had temporary custody. Mother further contends that

she was the children's primary caregiver and their constant support. In addition, Mother challenges the fact that only C.N. was interviewed in camera, that the GAL's report reserved only one paragraph for each child's wishes, and that the GAL was not present during the dispositional hearing and was not available for cross-examination about the children's wishes.

{¶ 46} As a preliminary matter, we note that prior to 2013, the parents were married. *See* April 2013 GAL report , which indicates that the parties were going through a divorce. Thus, the children would have lived with both parents, not just mother, until the parents separated. In addition, no evidence was presented at the hearing regarding the parents' respective involvement prior to their separation.

{¶ 47} More importantly, there is no evidence that one parent desired more involvement than the other. In fact, from the beginning of the case, Father expressed a desire for equal parenting time. However, Mother indicated that she did not want the children to be placed with father and refused to consider shared parenting. *See, e.g.*, February 8, 2013 neglect and dependency complaint, p. 2 (indicating that Mother refused to call Father or his mother to care for C.N., but instead, left the child locked alone in a room while she went to work); April 2, 2013 GAL report, pp. 2-3 (indicating that father would like custody of the children, and believed Mother's stubbornness and hatred of him caused the child-endangering incident); December 19, 2013 MCCS Motion and Affidavit for Legal Custody to Mother or in the Alternative, Legal Custody to Father, p. 3 (indicating both parents wanted custody); March 28, 2014 GAL report, p. 4 (recommending shared parenting); and June 25, 2014 SAR filed on July 1, 2014, p. 2 (indicating that Mother would not agree to shared parenting at the prior court hearing).

{¶ 48} Furthermore, during the proceedings that occurred after the complaint was filed (from February 2013 to the time of the custody hearing in November 2015), Father had custody of the children for a significant period of time.

{¶ 49} In responding to Mother's argument, MCCS contends that even if the trial court erred in using the best interest factors in R.C. 2151.414(D)(1), any error was harmless. In this regard, MCCS contends that all the best interest factors in R.C. 3109.04(F)(1) weigh in Father's favor.

{¶ 50} As was noted, we have held that the best interest factors in R.C. 3109.04(F)(1) "are appropriate in determining motions for legal custody in abuse, dependency and neglect cases." *In re K.Y.*, 2d Dist. Clark No. 2012-CA-71, 2013-Ohio-3039, ¶ 12, citing *In re J.W.*, 2d Dist. Greene No. 2009-CA-8, 2009-Ohio-4605. *See also D.S.*, 2d Dist. Clark No. 2013-CA-51, 2014-Ohio-2444, at ¶ 9. Some courts have found the factors in R.C. 2151.414(D) "instructive when making a best-interest-of-the-child determination," even though these factors apply to permanent custody decisions. (Citations omitted.) *In re E.A.*, 8th Dist. Cuyahoga No. 99065, 2013-Ohio-1193, ¶ 13. Other courts use a combination of the best interest factors in both statutes or " 'general notions of what should be considered regarding the best interests of the children.' " *In re I.R.*, 9th Dist. Summit No. 27775, 2016-Ohio-2919, ¶ 9, quoting *In re A.K.*, 9th Dist. Summit No. 26291, 2012-Ohio-4430, ¶ 25.

{¶ 51} Notably, R.C. 3109.04(F)(1) does not limit courts to just the listed factors; courts are permitted to consider "all relevant factors." Thus, the trial court could consider other factors, including those in R.C. 2151.414(D)(1), if the court so chose. The trial court, therefore, did not commit error by referencing R.C. 2151.414(D)(1).

{¶ 52} We do generally agree with MCCS that the factors in R.C. 3109.04(F)(1) weigh in favor of Father. The only factor that might be classified as neutral or as weighing equally in each party's favor is R.C. 3109.04(F)(1)(a), which pertains to "[t]he wishes of the child's parents regarding the child's care * * *." Both parents did express a desire to have custody of the children, so that factor would not specifically weigh in Father's favor. However, the remaining factors, as discussed above, are in Father's favor. Furthermore, the factors in R.C. 2151.414(D)(1) do not assist Mother. Instead, the record supports the court's conclusions that Mother did not meet her case plan objectives regarding parenting classes, that MCCS was unable to ensure the children were safe and secure following Mother's move to Georgia, that Mother failed to provide MCCS with access to the children, and that Father did complete his case plan.

{¶ 53} As was noted, Mother challenges the fact that only C.N. was interviewed in camera. However, Mother failed to request in-camera interviews with any of the children, as is required by R.C. 3109.04(B)(1). All three children were interviewed by the GAL on October 14, 2015, and all three told the GAL that they wanted to live with their father in Dayton and did not want to live with their mother in Georgia.

{¶ 54} Finally, the individual who prepared the latest GAL report did not appear at the custody hearing, but an attorney appeared in his place. At the end of the hearing, the attorney indicated that his recommendation was consistent with the GAL's investigation. Transcript of Proceedings, p. 79.

{¶ 55} Mother did not object to this, nor did she indicate that she wished to ask any questions of the GAL or the attorney who appeared. We, therefore, review the matter only for plain error, which "permits correction of judicial proceedings when error is clearly

apparent on the face of the record and is prejudicial to the appellant." (Citation omitted.) *Reichert v. Ingersoll*, 18 Ohio St.3d 220, 223, 480 N.E.2d 802 (1985). *Accord Corey v. Corey*, 2d Dist. Greene No. 2013-CA-73, 2014-Ohio-3258, ¶ 8; *In re Tyas*, 12th Dist. Clinton No. CA2002-02-010, 2002-Ohio-6679, ¶ 11. The Supreme Court of Ohio has stressed on many occasions that use of this doctrine "is to be taken with utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *Reichert* at 223, citing *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

**{¶ 56}** As a preliminary matter, we note that the trial court referred to the report of the GAL at only one point – when it considered the children's wishes, as expressed in the GAL's report. *See* April 25, 2016 Decision and Judgment Concerning the Objections of the Magistrate, p. 7, citing R.C. 2151.414(D)(1)(b). During the rest of its decision, the trial court discussed only the evidence presented at the hearing.

**{¶ 57}** With respect to the GAL, we have said that "due process requires that parties to the proceeding be afforded an opportunity to cross-examine the GAL." *In re K.S.*, 2d Dist. Montgomery No. 26701, 2015-Ohio-4117, ¶ 24, citing *In re Hoffman*, 97 Ohio St.3d 92, 2002–Ohio–5368, 776 N.E.2d 485, ¶ 25. However, *K.S.* was a permanent custody proceeding involving termination of parental rights, as was *Hoffman*, and we have said that *Hoffman* could be distinguished on this basis. *See Hutchinson v. Hutchinson*, 2d Dist. Montgomery No. 26221, 2014-Ohio-4604, ¶ 25. In *Hutchinson*, we applied a plain error analysis and concluded that the circumstances did not warrant reversal of the trial court's custody decision. *Id.* at ¶ 19-28.

**{¶ 58}** Our research of all Ohio cases citing *Hoffman* indicates that the vast

majority involve termination of parental rights or cases in which rights are being divested permanently by adoption. A few cases have extended *Hoffman* to custody proceedings between parents. *See, e.g., In re A.A.*, 9th Dist. Summit No. 25253, 2010-Ohio-5735, ¶ 5 and 10 (sustaining mother's assignment of error where trial court refused to allow her to cross-examine guardian ad litem after guardian had actually testified at the hearing and had submitted a report.)

{¶ 59} We agree that in such a situation, a fundamental deprivation of due process rights could occur. It is hard to understand how a court could allow one party to present testimony and preclude an opposing party from examining the same witness. However, that is not what occurred here. Mother was well aware that the GAL was not present at the hearing and could have asked for a continuance for purposes of cross-examining him. However, she did not do so.

{¶ 60} Similarly, in the case of *In re S.J.*, 9th Dist. Summit No. 22554, 2005-Ohio-4945, the court of appeals reversed a legal, rather than permanent, custody decision where a guardian ad litem had relied on parts of an interstate compact study while testifying, and the court had denied the mother's request for admission of the complete study into evidence. The magistrate's decision was based on the fact that the mother had already rested her case. *Id.* at ¶ 8. The court of appeals found this ruling "clearly erroneous." *Id.* at ¶ 9. Although the court of appeals acknowledged that "legal and permanent custody are admittedly different things," it decided to "apply a tolerant view of prejudice, and so afford the child's parents the procedural and substantive protections available under the law." *Id.* at ¶ 15. Again, this is not the situation before us. The trial court did not block Mother from admitting evidence that the opposing party had been

allowed to use.

**{¶ 61}** The Eighth District Court of Appeals also held in a parental termination case that it would review only for plain error, where appellant "never asked to question the guardian ad litem about his report." *In re A.D.*, 8th Dist. Cuyahoga No. 85648, 2005-Ohio-5441, ¶ 8. In that case, the court also observed that "[t]he failure to assert a right is not the same as being prevented from asserting a right." *Id.* at ¶ 7.

**{¶ 62}** After reviewing for plain error, we conclude that the current case does not present exceptional circumstances that require reversal to prevent a manifest miscarriage of justice. *Reichert*, 18 Ohio St.3d at 223, 480 N.E.2d 802. Although the GAL should have been present at the hearing, the record provides substantial, if not overwhelming evidence supporting Father's designation as the custodial parent. Furthermore, a reading of the trial court's opinion indicates that it placed little emphasis on what the children told the GAL. This point was mentioned in only one paragraph of a thorough ten-page decision, in which the court focused otherwise on the testimony presented at the custody hearing. Accordingly, the Third Assignment of Error is without merit and is overruled.

## V. Conclusion

**{¶ 63}** All of Mother's assignments of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

DONOVAN, P.J. and FROELICH, J., concur.

Copies mailed to:

Mathias H. Heck, Jr.
Meagan D. Woodall
Andrew C. Schlueter
Amy E. Ferguson
Bradley Baldwin-GAL
Ted Valley-GAL
Hon. Nick Kuntz