[Cite as *In re Ca.S.*, 2021-Ohio-3874.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
PICKAWAY COUNTY

IN THE MATTER OF:          :
                          :
   Ca.S.,                 :          Case No. 21CA9
                          :          Case No. 21CA10
   Adjudicated Dependent Child,  :
                          :
   AND                    :          <u>DECISION AND JUDGMENT</u>
                          :          <u>ENTRY</u>
   C.S.,                  :
                          :
   Adjudicated Abused Child.  :

---

<u>APPEARANCES</u>:

Autumn D. Adams, Toledo, Ohio, for Appellant.

Krystin N. Martin, Assistant Pickaway County Prosecuting Attorney, Circleville, Ohio, for Appellee.

---

Smith, P.J.

{¶1} In these consolidated appeals, the children's biological mother, C.M. ("Appellant"), appeals the trial court's judgments that (1) granted Pickaway County Job and Family Services ("the agency") permanent custody of C.S. and (2) granted legal custody of Ca.S. to the paternal grandparents. In each appeal, Appellant raises two assignments of error. In both appeals, Appellant first asserts that the trial court abused its discretion by denying her motion to continue the hearing to consider the motions for

permanent custody and for legal custody.  We disagree with Appellant.
Instead, the trial court could have reasonably determined that further delays
would not be in the children's best interests and that a continuance was not
necessary to secure fair treatment for Appellant.

{¶2} Next, Appellant contends that the trial court's decision to grant
the agency permanent custody of C.S. is against the manifest weight of the
evidence.  Appellant argues that clear and convincing evidence does not
support the trial court's finding that granting the agency permanent custody
of C.S. is in his best interest.  Appellant additionally asserts that the trial
court abused its discretion by granting the paternal grandparents legal
custody of Ca.S.  Appellant contends that she complied with the case plan
requirements and that returning the children to her custody is in their best
interests.

{¶3} We do not agree with Appellant.  Instead, our review of the
record indicates that the trial court carefully considered all of the evidence
presented at the final hearing and determined that the children's best interest
would be served by placing C.S. in the agency's permanent custody and by
placing Ca.S. in the grandparents' legal custody.  We do not believe that the
trial court's judgment granting the agency permanent custody of C.S. is
against the manifest weight of the evidence.  We further do not believe that

the trial court abused its discretion by granting the paternal grandparents legal custody of Ca.S.  Consequently, we overrule Appellants' assignments of error and affirm the trial court's judgment.

FACTS

{¶4} In November 2018, Appellant gave birth to C.S.  C.S. tested positive for several illegal substances and spent a few weeks in the hospital to receive treatment for withdrawal symptoms.

{¶5} Before C.S.'s release from the hospital, the agency received a referral regarding the child.  The agency learned that not only had the child tested positive for illegal substances at birth but also that Appellant admitted that she used drugs during her pregnancy.  The agency later filed motions requesting the court to enter ex parte emergency custody orders placing C.S. and his two-and-one-half-year-old sibling, Ca.S., in their father's temporary custody with an order for Appellant to vacate the premises.  The court granted the agency's motions.

{¶6} The agency also filed complaints alleging that C.S. is an abused child and that Ca.S. is a dependent child.  The agency asked the court to place the children in their father's temporary custody and to grant the agency a protective supervision order.

{¶7} On December 18, 2018, the court held a pre-trial hearing. During the hearing, the agency asked both Appellant and the children's father to take a drug screen. Appellant tested positive for buprenorphine and the father tested positive for a heroin metabolite. The father left the hearing and did not return. The agency thus asked the court to place C.S. in its temporary custody and to place Ca.S. in the paternal grandparents' temporary custody. The court granted the agency's request.

{¶8} In February 2019, the court held an adjudication hearing. Appellant admitted the allegations contained in the abuse and dependency complaints and agreed to proceed to disposition. The court adjudicated C.S. an abused child and Ca.S. a dependent child. The court placed C.S. in Appellee's temporary custody and placed Ca.S. in the paternal grandparents' temporary custody.

{¶9} The agency developed a case plan for the family to follow with the goal of reunification. The case plan required Appellant to (1) undergo an alcohol and drug assessment and comply with any recommendations, (2) remain compliant with her medication-assisted treatment program, (3) provide the agency with a list of any current prescriptions and allow random pill counts, (4) complete a mental health assessment and comply with any recommendation, (5) submit to random drug screens and test negative for

illegal substances, (6) obtain and provide proof of employment, (7) obtain and maintain safe and stable housing, (8) exercise consistent visitation with the children, and (9) avoid any additional criminal charges.

{¶10} Appellant completed her alcohol, drug, and mental health assessments. Appellant also attended recommended treatment and enrolled in Family Treatment Court. Additionally, Appellant found safe and stable housing, remained employed, and completed random drug screens. Given Appellant's compliance, the court gradually expanded Appellant's visitation rights to the point where the court permitted Appellant to have unsupervised and overnight visits with the children.

{¶11} Appellant continued, however, to have relapses and to test positive for illegal substances. Integrated Services recommended inpatient treatment for Appellant, and Appellant was scheduled for detox in August 2019. Appellant refused the treatment.

{¶12} In December 2019, Appellant decided to enter an inpatient treatment program. Appellant successfully completed the treatment program and continued to comply with the Family Treatment Court program upon finishing the inpatient treatment program.

{¶13} During the next several months, Appellant continued to attend treatment and engage in Family Treatment Court.  Appellant remained sober and engaged in all required groups and meetings.

{¶14} In June 2020, however, Appellant opted out of Family Treatment Court.  At an August 2020 case review, the court noted that Appellant was incarcerated.  Additionally, the agency reported that Appellant had been struggling with sobriety.  Integrated Services recommended a long-term inpatient treatment program for Appellant.  Appellant did not want to engage with medication-assisted treatment and was not taking suboxone.  Appellant indicated that she did not believe that she needed to receive suboxone.

{¶15} On August 31, 2020, the agency filed motions that requested the court to place Ca.S. in the paternal grandparents' legal custody and to place C.S. in the agency's permanent custody.[1]  The court scheduled the motions for a final hearing to be held on November 16, 2020.

{¶16} On November 10, 2020, Appellant's counsel filed a motion to withdraw.  The court granted the motion and appointed new counsel.  The court then rescheduled the final hearing to January 8, 2021.

---

[1]On October 20, 2020, the agency also filed a motion that requested the court to place Ca.S. in its permanent custody.  The agency later chose to proceed solely on its motion requesting the court to place Ca.S. in the grandparents' legal custody.

{¶17} The court later rescheduled the January 8, 2021 hearing date to March 16, 2021, due to rise in COVID-19 cases. In the interim, Appellant's second counsel filed a motion to withdraw due to a change in employment. The court granted the motion, and on January 11, 2021, the court appointed new counsel to represent Appellant.

{¶18} Appellant's new counsel filed a motion to continue the March 16, 2021 hearing date to give him additional time to review the case file and to give Appellant additional time to fulfill the case plan goals given the COVID-19 disruptions.

(¶19} The trial court denied the request to continue the hearing. The court explained:

> The file reflects that counsel was appointed on January 11, 2021. This matter was scheduled for hearing on March 16, 2021. Based upon the age of the case and the need for finality, counsel's request was denied. As set forth below, this matter was scheduled twice for hearing. The first hearing date was continued due to mother's counsel having a conflict of interest based upon mother's request to call a certain witness. The second hearing date was continued by the court based upon the spike in COVID-19 cases. As set forth below, mother's request to continue the hearing because she was unable to successfully complete her case plan and reunify with [the children] is not well-taken.

{¶20} On March 16, 2021, and continuing on April 2, 2021, the trial court held a hearing to consider the agency's motions. At the hearing, an

agency supervisor testified that when Appellant gave birth to Ca.S. in 2016, the child had tested positive for illegal substances. At the time, the family lived in Ross County, and the Ross County children's services agency investigated the matter. The child was temporarily placed with the paternal grandparents. Appellant successfully completed the case plan, and the agency returned the child to Appellant's custody.

{¶21} Amy Hoar testified she has been the family's caseworker since August 2019. Hoar explained that Appellant complied with elements of the case plan. Appellant completed an alcohol and drug assessment and obtained treatment from several providers throughout the history of the case. Hoar indicated that all of the treatment providers have recommended either inpatient treatment or intensive outpatient treatment. Hoar stated that Appellant usually refused to participate in inpatient treatment. Appellant did, however, complete a 30-day treatment program through Pickaway Area Recovery Services.

{¶22} Hoar related that even though Appellant completed various treatment programs, the agency continued to have concerns. Hoar stated that Appellant submitted to drug screens and that while some were negative, others were positive. Moreover, Appellant was not testing positive for her prescribed medication.

{¶23} Appellant testified and explained that even though she has struggled with drug addiction since she was 13 years of age, she has shown that she can remain sober. She claimed that she was sober from 2009 through 2016. Appellant further agreed, however, that she had been incarcerated from 2010 to 2014.

{¶24} The trial court subsequently placed Ca.S. in the paternal grandparents' legal custody and placed C.S. in the agency's permanent custody. The court determined that the agency presented clear and convincing evidence that C.S. has been in its temporary custody for twelve or more months of a consecutive 22-month period and that placing C.S. in the agency's permanent custody is in his best interest. The court further concluded that placing Ca.S. in the grandparents' legal custody is in her best interest.

{¶25} In evaluating C.S.'s best interest, the court considered C.S.'s interactions and interrelationships. The court found that Appellant's physical interactions with C.S. were appropriate and noted that during visits, C.S. interacted with Ca.S. The court indicated that the child is bonded to the foster family and that the foster family has stated that they would adopt the child. The court concluded that C.S. is too young to directly express his

wishes but noted that his guardian ad litem and legal counsel recommended that the court place the child in the agency's permanent custody.

{¶26} The court next considered C.S.'s need for a legally secure permanent placement and whether he can achieve that type of placement without granting the agency permanent custody. The court observed that the father did not appear for the final hearing, did not complete any part of the case plan, and failed to remain sober. Moreover, the father's current living situation is unknown.

{¶27} The court noted that although Appellant complied with certain components of the case plan, Appellant was unable to maintain continuous sobriety throughout the history of the case. The court found that during the pendency of the case, Appellant relapsed three times: (1) in August 2019; (2) in December 2019; and (3) in August 2020.

{¶28} The court observed that Appellant stated that she has been using drugs for the past 23 years and that she has entered at least 12 treatment programs throughout that time. The court also recognized Appellant's testimony that Appellant understands the triggers that lead her to use drugs and has established coping mechanisms. However, the court concluded that despite Appellant's treatment, she continued to experience relapses during the history of the case. The court determined that Appellant

"struggles with mental health issues and long-term chemical dependency issues." The court did not believe that Appellant had attained stability and found that "it is unclear whether she will ever obtain stability."

{¶29} The court made similar findings with regard to Ca.S.'s best interest and the decision to place her in the grandparents' legal custody. The court found that although Appellant loves Ca.S., Appellant "has failed to demonstrate an ability to provide Ca.S. with permanent placement."

{¶30} The court thus granted the paternal grandparents legal custody of Ca.S. and granted the agency permanent custody of C.S. These appeals followed.

CASE NUMBER 21CA9

ASSIGNMENTS OF ERROR

I.    THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT FAILED TO GRANT MOTHER'S REQUEST FOR A CONTINUANCE OF THE HEARING ON PCJFS' MOTION FOR PERMANENT CUSTODY.

II.   THE TRIAL ABUSED ITS DISCRETION WHEN IT FAILED TO REUNIFY Ca.S. WITH MOTHER AS MOTHER HAD COMPLETED CASE PLAN SERVICES AND THUS IT WAS IN Ca.S.'S BEST INTEREST TO BE RETURNED TO THE CARE OF HER MOTHER.

CASE NUMBER 21CA10

ASSIGNMENTS OF ERROR

III.    THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT FAILED TO GRANT MOTHER'S REQUEST FOR A CONTINUANCE OF THE HEARING ON PCJFS' MOTION FOR PERMANENT CUSTODY.

IV.    THE TRIAL ABUSED ITS DISCRETION WHEN IT FAILED TO REUNIFY C.S. AS PCJFS DID NOT ESTABLISH BY CLEAR AND CONVINCING EVIDENCE THAT PERMANENT CUSTODY WAS IN C.S.'S BEST INTEREST AS MOTHER HAD COMPLETED CASE PLAN SERVICES.

ANALYSIS

FIRST ASSIGNMENTS OF ERROR

{¶31} In her first assignments of error, Appellant argues that the trial court abused its discretion by overruling her motion to continue the final hearing.

{¶32} "The determination whether to grant a continuance is entrusted to the broad discretion of the trial court." *State v. Conway*, 108 Ohio St.3d 214, 2006–Ohio–791, 842 N.E.2d 996, ¶ 147, citing *State v. Unger*, 67 Ohio St.2d 65, 423 N.E.2d 1078 (1981), syllabus.  Consequently, " '[a]n appellate court must not reverse the denial of a continuance unless there has been an abuse of discretion.' " *State v. Jones*, 91 Ohio St.3d 335, 342, 744 N.E.2d 1163 (2001), quoting *Unger*, 67 Ohio St.2d at 67.  " '[A]buse of discretion

[means] an 'unreasonable, arbitrary, or unconscionable use of discretion, or * * * a view or action that no conscientious judge could honestly have taken.' " *State v. Kirkland,* 140 Ohio St.3d 73, 2014-Ohio-1966, 15 N.E.3d 818, ¶ 67, quoting *State v. Brady,* 119 Ohio St.3d 375, 2008-Ohio-4493, 894 N.E.2d 671, ¶ 23. "An abuse of discretion includes a situation in which a trial court did not engage in a ' "sound reasoning process." ' " *State v. Darmond,* 135 Ohio St.3d 343, 2013-Ohio-966, 986 N.E.2d 971, ¶ 34, quoting *State v. Morris,* 132 Ohio St.3d 337, 2012-Ohio-2407, 972 N.E.2d 528, ¶ 14, quoting *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.,* 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990). The abuse-of-discretion standard is deferential and does not permit an appellate court to simply substitute its judgment for that of the trial court. *Darmond* at ¶ 34.

{¶33} The Supreme Court of Ohio has adopted a balancing approach that recognizes "all the competing considerations" to determine whether a trial court's denial of a motion to continue constitutes an abuse of discretion. *Unger,* 67 Ohio St.2d at 67. In exercising its discretion, a trial court should "[w]eigh[] against any potential prejudice to a defendant * * * concerns such as a court's right to control its own docket and the public's interest in the prompt and efficient dispatch of justice." *Id.* A court should

also consider: (1) the length of the delay requested; (2) whether other continuances have been requested and received; (3) the inconvenience to litigants, witnesses, opposing counsel and the court; (4) whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; (5) whether the defendant contributed to the circumstance which gives rise to the request for a continuance; and (6) other relevant factors, depending on the unique circumstances of the case. *Id.; State v. Conway,* 108 Ohio St.3d 214, 2006-Ohio-791, 842 N.E.2d 996, ¶ 147; *State v. Jordan*, 101 Ohio St.3d 216, 2004-Ohio-783, 804 N.E.2d 1, ¶ 45.

{¶34} " 'There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied.' " *Unger,* 67 Ohio St.2d at 67, quoting *Ungar v. Sarafite,* 376 U.S. 575, 589, 84 S.Ct. 841, 11 L.Ed.2d 921 (1964); *State v. Broom*, 40 Ohio St.3d 277, 288, 533 N.E.2d 682 (1988) ("Obviously, not every denial of a continuance constitutes a denial of due process."). Furthermore, "[o]n review we must look at the facts of each case and the [appellant] must show how [s]he was prejudiced by the denial of the continuance before there can be a finding of prejudicial error." *Broom*, 40 Ohio St.3d at 288. Additionally, with respect

to the continuance of juvenile court hearings, Juv.R. 23 provides that "[c]ontinuances shall be granted only when imperative to secure fair treatment for the parties."

{¶35} In the case at bar, we do not believe the trial court abused its discretion by overruling Appellant's motion to continue the final hearing. As the trial court observed, the cases had been pending for more than two years when Appellant asked the court to continue the hearing for a third time. The trial court could have rationally determined that extending the cases for another continuance would not be in the children's best interest and would not be imperative to secure fair treatment for Appellant.

{¶36} Moreover, although Appellant's new counsel had less than two months to prepare for the final hearing, counsel nevertheless fully participated in the final hearing and asked pointed questions of the witnesses who testified. Nothing in the final hearing transcript indicates that Appellant's counsel was not fully prepared for the hearing. Rather, the transcript shows the opposite. Therefore, Appellant cannot establish that the court's refusal to continue the matter resulted in prejudicial error.

{¶37} Accordingly, based upon the foregoing reasons, we overrule Appellant's first assignments of error.

### SECOND ASSIGNMENTS OF ERROR

{¶38} In her second assignments of error, Appellant contends (1) that the trial court's decision to grant the agency permanent custody of C.S. is against the manifest weight of the evidence and (2) that the court abused its discretion by placing Ca.S. in the grandparents' legal custody. Appellant asserts that the agency failed to present clear and convincing evidence that placing C.S. in the agency's permanent custody is in his best interest. She further contends that the preponderance of the evidence does not support the trial court's decision to place Ca.S. in the paternal grandparents' legal custody. Appellant claims that she completed the case plan requirements and that her compliance shows that reuniting the children with her is in their best interests. We first address Appellant's argument that her case plan compliance shows that the children should be returned to her custody.

CASE PLAN COMPLIANCE

{¶39} A parent's case plan compliance may be a relevant, but not necessarily conclusive, factor when a court evaluates which placement option will serve a child's best interest. *See In re T.J.*, 4th Dist. Highland Nos. 15CA15 and 15CA16, 2016-Ohio-163, 2016 WL 228187, ¶ 36, citing *In re R.L.*, 9th Dist. Summit Nos. 27214 and 27233, 2014-Ohio-3117, ¶ 34 (stating that "although case plan compliance may be relevant to a trial court's best interest determination, it is not dispositive of it"); *In re S.C.,* 8th

Dist. Cuyahoga No. 102349, 2015-Ohio-2280, ¶ 40 ("Compliance with a case plan is not, in and of itself, dispositive of the issue of reunification."); *accord In re K.M.*, 4th Dist. Ross No. 19CA3677, 2019-Ohio-4252, 2019 WL 5213026, ¶ 70, citing *In re W.C.J.,* 4th Dist. Jackson No. 14CA3, 2014-Ohio-5841, ¶ 46 (stating that "[s]ubstantial compliance with a case plan is not necessarily dispositive on the issue of reunification and does not preclude a grant of permanent custody to a children's services agency"); *In re N.L.,* 9th Dist. Summit No. 27784, 2015-Ohio-4165, ¶ 35 (stating that substantial compliance with a case plan, in and of itself, does not establish that a grant of permanent custody to an agency is erroneous").  "Indeed, because the trial court's primary focus in a permanent custody proceeding is the child's best interest, 'it is entirely possible that a parent could complete all of his/her case plan goals and the trial court still appropriately terminate his/her parental rights.' "  *In re W.C.J.*, 4th Dist. Jackson No. 14CA3, 2014-Ohio-5841, 2014 WL 7477958, ¶ 46, quoting *In re Gomer*, 3d Dist. Wyandot Nos. 16-03-19, 16-03-20, and 16-03-21, 2004-Ohio-1723, ¶ 36; *accord In re K.J.*, 4th Dist. Athens No. 08CA14, 2008-Ohio-5227, 2008 WL 4482690 ¶ 24 (stating that "when considering a R.C. 2151.414(D)(1)(d) permanent custody motion, the focus is upon the child's best interests, not upon the parent's compliance with the case plan").  Thus, a parent's alleged

case plan compliance does not preclude a trial court from awarding

permanent custody to a children services agency when doing so is in the

child's best interest. *Id.*

{¶40} A similar analysis applies in legal custody proceedings:

> "* * * A parent's case-plan compliance is relevant, of
> course, to the best-interest determination, but it is not
> dispositive. *In re T.S.*, 2017-Ohio-482, 85 N.E.3d 225, ¶
> 13 (2d Dist.). Satisfying case-plan objectives is a means
> to an end, not an end unto itself. *Id.* at ¶ 12. The
> statutory best-interest factors may justify an award of
> legal custody to someone other than a parent, or even the
> termination of parental rights, despite a parent's
> completion of all case-plan objectives. *Id.* This is so
> because the best-interest factors encompass much more
> than the parent's case-plan objectives, and they do so
> from the perspective of the child's particular needs. In
> short, the focus of a best-interest analysis is on the child,
> not the parent."

*In re C.W.*, 2nd Dist. Montgomery No. 28781, 2020-Ohio-6849, 2020 WL

7648265, ¶ 19, quoting *In re A.K.*, 2d Dist. Montgomery No. 27575, 2017-

Ohio-8100, ¶ 11.

{¶41} In the case at bar, Appellant completed many of the case plan

services, including the requirement to complete an alcohol and drug

assessment and to receive treatment. At times, however, Appellant refused

to follow the treatment providers' recommendations to enroll in an inpatient

treatment program. Moreover, although Appellant completed drug treatment

programs, those programs apparently did not help Appellant completely

conquer her drug addiction. Instead, Appellant continued to relapse while the case was pending. Thus, although Appellant did, in fact, complete many of the case plan services, Appellant did not fulfill the overall goal to show that she will provide the children with a safe, stable, permanent home where they will be free from the harm that may result if Appellant were to have another relapse.

{¶42} Furthermore, even if Appellant completed each case plan requirement, we reiterate that the focus is upon the child's best interest and not upon a parent's case plan compliance. As we explain below, the evidence supports the trial court's best interest determinations with respect to each child.

## PERMANENT CUSTODY

{¶43} We next address Appellant's argument that clear and convincing evidence does not support the trial court's decision to grant the agency permanent custody of C.S.

## STANDARD OF REVIEW

{¶44} A reviewing court generally will not disturb a trial court's permanent custody decision unless the decision is against the manifest weight of the evidence. *See In re R.M.*, 2013-Ohio-3588, 997 N.E.2d 169, ¶ 53 (4th Dist.). When an appellate court reviews whether a trial court's

permanent custody decision is against the manifest weight of the evidence, the court " ' " 'weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered.' " ' " *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 20, quoting *Tewarson v. Simon*, 141 Ohio App.3d 103, 115, 750 N.E.2d 176 (9th Dist.2001), quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶45} In a permanent custody case, the ultimate question for a reviewing court is "whether the juvenile court's findings * * * were supported by clear and convincing evidence." *In re K.H.*, 119 Ohio St.3d 538, 2008-Ohio-4825, 895 N.E.2d 809, ¶ 43. In determining whether a trial court based its decision upon clear and convincing evidence, "a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *State v. Schiebel*, 55 Ohio St.3d 71, 74, 564 N.E.2d 54 (1990). "Thus, if the children services agency presented competent and credible evidence upon which the trier of fact reasonably could have formed a firm belief that permanent

custody is warranted, then the court's decision is not against the manifest weight of the evidence." *R.M.* at ¶ 55.

{¶46} Once the reviewing court finishes its examination, the court may reverse the judgment only if it appears that the factfinder, when resolving the conflicts in evidence, " 'clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered.' " *Thompkins* at 387, 678 N.E.2d 541, quoting *Martin* at 175, 485 N.E.2d 717. A reviewing court should find a trial court's permanent custody decision against the manifest weight of the evidence only in the " 'exceptional case in which the evidence weighs heavily against the [decision].' " *Id.*, quoting *Martin* at 175, 485 N.E.2d 717.

## PERMANENT CUSTODY PRINCIPLES

{¶47} A parent has a "fundamental liberty interest" in the care, custody, and management of his or her child and an "essential" and "basic civil right" to raise his or her children. *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); *In re Murray*, 52 Ohio St.3d 155, 157, 556 N.E.2d 1169 (1990); *accord In re D.A.*, 113 Ohio St.3d 88, 2007-Ohio-1105, 862 N.E.2d 829, ¶¶ 8-9. A parent's rights, however, are not absolute. *D.A.* at ¶ 11. Rather, " 'it is plain that the natural rights of a parent * * * are always subject to the ultimate welfare of the child, which is

the polestar or controlling principle to be observed.' " *In re Cunningham*, 59 Ohio St.2d 100, 106, 391 N.E.2d 1034 (1979), quoting *In re R.J.C.*, 300 So.2d 54, 58 (Fla. App. 1974).  Thus, the State may terminate parental rights when a child's best interest demands such termination.  *D.A.* at ¶ 11.

PERMANENT CUSTODY FRAMEWORK

{¶48} R.C. 2151.414(B)(1) specifies that a trial court may grant a children services agency permanent custody of a child if the court finds, by clear and convincing evidence, that (1) the child's best interest would be served by the award of permanent custody, and (2) any of the following conditions applies:

> (a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period if, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
> (b) The child is abandoned.
> (c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.
> (d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a

consecutive 22-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state.

(e) The child or another child in the custody of the parent or parents from whose custody the child has been removed has been adjudicated an abused, neglected, or dependent child on three separate occasions by any court in this state or another state.

{¶49} The statute further states:

For the purposes of division (B)(1) of this section, a child shall be considered to have entered the temporary custody of an agency on the earlier of the date the child is adjudicated pursuant to section 2151.28 of the Revised Code or the date that is sixty days after the removal of the child from home.

R.C. 2151.414(B)(1)(e).

{¶50} In the case at bar, the trial court found that the child has been in the agency's temporary custody for more than 12 months of a consecutive 22-month period, and thus, that R.C. 2151.414(B)(1)(d) applies. The mother does not challenge the court's finding. Therefore, we do not address the issue.

{¶51} R.C. 2151.414(D)(1) requires a trial court to consider all relevant, as well as specific, factors to determine whether a child's best interest will be served by granting a children services agency permanent

custody. The specific factors include: (1) the child's interaction and interrelationship with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the child's wishes, as expressed directly by the child or through the child's guardian ad litem, with due regard for the child's maturity; (3) the child's custodial history; (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; and (5) whether any factors listed under R.C. 2151.414(E)(7) to (11) apply.

{¶52} Determining whether granting permanent custody to a children services agency will promote a child's best interest involves a delicate balancing of "all relevant [best interest] factors," as well as the "five enumerated statutory factors." *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816, ¶ 57, citing *In re Schaefer*, 111 Ohio St.3d 498, 2006-Ohio-5513, 857 N.E.2d 532, ¶ 56; *accord In re C.G.*, 9th Dist. Summit Nos. 24097 and 24099, 2008-Ohio-3773, 2008 WL 2906526, ¶ 28; *In re N.W.*, 10th Dist. Franklin Nos. 07AP-590 and 07AP-591, 2008-Ohio-297, 2008 WL 224356, ¶ 19. However, none of the best interest factors requires a court to give it "greater weight or heightened significance." *C.F.* at ¶ 57. Instead, the trial court considers the totality of the circumstances when

making its best interest determination. *In re K.M.S.*, 3d Dist. Marion Nos. 9-15-37, 9-15-38, and 9-15-39, 2017-Ohio-142, 2017 WL 168864, ¶ 24; *In re A.C.*, 9th Dist. Summit No. 27328, 2014-Ohio-4918, 2014 WL 5690571, ¶ 46. In general, "[a] child's best interest is served by placing the child in a permanent situation that fosters growth, stability, and security." *In re C.B.C.*, 4th Dist. Lawrence Nos. 15CA18 and 15CA19, 2016-Ohio-916, 2016 WL 915012, ¶ 66, citing *In re Adoption of Ridenour*, 61 Ohio St.3d 319, 324, 574 N.E.2d 1055 (1991).

{¶53} In the case at bar, we do not believe that the trial court's best interest determination is against the manifest weight of the evidence. The agency presented substantial clear and convincing evidence that placing C.S. in its permanent custody would serve the child's best interest.

### Child's Interactions and Interrelationships

{¶54} The agency did not express any concerns regarding Appellant's interaction with C.S. during visitation. Moreover, Appellant clearly loves C.S. However, Appellant did not refrain from drug use during her pregnancy, and C.S. was born with drugs in his system. C.S. spent several weeks in the hospital after his birth to receive treatment for withdrawal symptoms.

{¶55} C.S. has an older sister, Ca.S., with whom he interacts during visits with Appellant. Although the siblings appear to interact appropriately during visits with Appellant, they never have lived together for any length of time.

{¶56} C.S. has lived with the same foster family since shortly after his birth and has remained in the home since that time. C.S. is bonded to the foster family, and the foster family provides for all of C.S.'s needs. The foster family intends to adopt C.S. if given the option.

### Child's Wishes

{¶57} As the trial court noted, the child is too young to directly express his wishes. The child's guardian ad litem and legal counsel recommended that the court grant the agency permanent custody of C.S.

### Custodial History

{¶58} After C.S.'s release from the hospital, he lived with his father and Ca.S. for a few weeks. In December 2018, the court placed C.S. in the agency's temporary custody, and he has remained in its temporary custody since that time. The child never has been in Appellant's custody.

### Legally Secure Permanent Placement

{¶59} "Although the Ohio Revised Code does not define the term 'legally secure permanent placement,' this court and others have generally

interpreted the phrase to mean a safe, stable, consistent environment where a child's needs will be met." *In re M.B.*, 4th Dist. Highland No. 15CA19, 2016-Ohio-793, ¶ 56, citing *In re Dyal*, 4th Dist. Hocking No. 01CA12, 2001 WL 925423, *9 (Aug. 9, 2001) (implying that "legally secure permanent placement" means a "stable, safe, and nurturing environment"); *see also In re K.M.*, 10th Dist. Franklin Nos. 15AP-64 and 15AP-66, 2015-Ohio-4682, ¶ 28 (observing that legally secure permanent placement requires more than stable home and income but also requires environment that will provide for child's needs); *In re J.H.*, 11th Dist. Lake No. 2012-L-126, 2013-Ohio-1293, ¶ 95 (stating that mother unable to provide legally secure permanent placement when she lacked physical and emotional stability and that father unable to do so when he lacked grasp of parenting concepts); *In re J.W.*, 171 Ohio App.3d 248, 2007-Ohio-2007, 870 N.E.2d 245, ¶ 34 (10th Dist.)  (Sadler, J., dissenting) (stating that a legally secure permanent placement means "a placement that is stable and consistent"); Black's Law Dictionary 1354 (6th Ed. 1990) (defining "secure" to mean, in part, "not exposed to danger; safe; so strong, stable or firm as to insure safety"); *Id.* at 1139 (defining "permanent" to mean, in part, "[c]ontinuing or enduring in the same state, status, place, or the like without fundamental or marked change, not subject to fluctuation, or alteration, fixed

or intended to be fixed; lasting; abiding; stable; not temporary or transient").

Thus, "[a] legally secure permanent placement is more than a house with

four walls.  Rather, it generally encompasses a stable environment where a

child will live in safety with one or more dependable adults who will provide

for the child's needs." *M.B.* at ¶ 56.

{¶60} In the case at bar, we believe that clear and convincing

evidence supports the court's finding that the child needs a legally secure

permanent placement and that the child cannot obtain this type of placement

without granting the agency permanent custody.  Appellant's drug addiction

prevents her from maintaining a permanently stable environment for C.S.

The father's current situation is unknown.  No other suitable relatives are

available to care for C.S.

{¶61} We recognize that Appellant has engaged in substance abuse

treatment programs and successfully completed some.  Unfortunately,

Appellant has a lengthy history of substance abuse and has experienced

many relapses while trying to conquer her addiction.  To be sure, Appellant

has experienced periods of sobriety.  However, she experienced three

relapses while the case was pending.  Moreover, the longest period of

sobriety apparently occurred when she was imprisoned for several years.

{¶62} Additionally, this court has recognized that a parent's history is one of the best predictors of future behavior. *See In re West*, 4th Dist. Athens No. 05CA4, 2005-Ohio-2977, 2005 WL 1400029, ¶ 28, citing *In re A.S.*, 12th Dist. Butler Nos. CA2004-07-182 and CA2004-08-185, 2004-Ohio-6323, 2004 WL 2698408, ¶ 37 ("Past history is often the best predictor of future conduct. While surely people can change, the facts do not indicate that [the biological parents] have the motivation or ability to follow through and do what is necessary to regain custody of their child."); *In re Vaughn*, 4th Dist. Adams No. 00CA692, 2000 WL 33226177, *7 (Dec. 6, 2000) ("To further the interests of the children, the court must consider any evidence available to it, including a parent's pattern of conduct. Some of the most reliable evidence for the court to consider is the past history of the children and the parents."); *see also In re Brown*, 60 Ohio App.3d 136, 139, 573 N.E.2d 1217 (1st Dist.1989) (stating that the mother's "past parenting history and her ability to comply with prior reunification plans regarding her other children were relevant considerations in the juvenile court's dispositional determination" to award a children services agency permanent custody). Appellant's pattern of conduct over the course of her 23-year history of drug use shows that she experiences periods of sobriety but eventually relapses. Thus, even if at the time of the final hearing Appellant

had been in a period of sobriety, history suggests that Appellant would continue to struggle with sobriety.

{¶63} Furthermore, we have repeatedly recognized that trial courts need not experiment with a child's welfare:

> "* * * [A] child should not have to endure the inevitable to its great detriment and harm in order to give the * * * [parent] an opportunity to prove her suitability. To anticipate the future, however, is at most, a difficult basis for a judicial determination. The child's present condition and environment is the subject for decision not the expected or anticipated behavior of unsuitability or unfitness of the * * * [parent]. * * * The law does not require the court to experiment with the child's welfare to see if he will suffer great detriment or harm."

*In re W.C.J.*, 4th Dist. Jackson No. 14CA3, 2014-Ohio-5841, 2014 WL 7477958, ¶ 48, quoting *In re Bishop*, 36 Ohio App.3d 123, 126, 521 N.E.2d 838 (5th Dist.1987).

{¶64} In the case before us, the child has been in the agency's temporary custody for more than two years. During that time, Appellant did not adequately conquer her drug addiction so as to give the agency assurance that if it returned the child to her custody she would not relapse. The trial court could have decided that another relapse was inevitable given Appellant's history and that returning C.S. to Appellant's custody to allow her a chance to prove her suitability presented too great a risk to the young child's well-being.

{¶65} We understand that drug addiction is powerful and difficult to overcome, and that Appellant certainly made strides. However, we do not believe that it is in a child's best interest to continue the child in custodial limbo—or to return a child to a parent's care—when the parent is engaged in a long-term fight against drug addiction. We do not believe that it is in a child's best interest to be placed with a parent who may or may not once again experience a relapse, especially when the parent has a long history of drug use and relapses. While we commend Appellant for her efforts to combat her drug addition, we nevertheless believe that competent, credible, clear and convincing evidence supports the trial court's finding that placing C.S. in the agency's permanent custody is in his best interest.

## LEGAL CUSTODY

{¶66} Next, we review Appellant's argument that the trial court abused its discretion by placing Ca.S. in the paternal grandparents' legal custody.

## STANDARD OF REVIEW

{¶67} "A trial court has broad discretion in proceedings involving the care and custody of children." *In re Mullen*, 129 Ohio St.3d 417, 2011-Ohio-3361, 953 N.E.2d 302, ¶ 14. Consequently, we review a trial court's decision to award a party legal custody of an abused, neglected, or

dependent child for an abuse of discretion, and we afford its decision "the utmost deference." *In re E.W.*, 4th Dist. Washington Nos. 10CA18, 10CA19, and 10CA20, 2011-Ohio-2123, ¶ 18, citing *Miller v. Miller*, 37 Ohio St.3d 71, 74, 523 N.E.2d 846 (1988); *accord In re A.J.*, 148 Ohio St.3d 218, 2016-Ohio-8196, 69 N.E.3d 733, ¶ 27, citing *Davis v. Flickinger*, 77 Ohio St.3d 415, 417, 674 N.E.2d 1159 (1997) (stating that "a trial court's decision in a custody proceeding is subject to reversal only upon a showing of abuse of discretion"); *In re A.L.P.*, 4th Dist. Washington No. 14CA37, 2015-Ohio-1552, ¶ 15; *In re C.J.L.*, 4th Dist. Scioto No. 13CA3545, 2014-Ohio-1766,  ¶ 12.  Ordinarily, "[t]he term 'abuse of discretion' implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable." *In re H.V.*, 138 Ohio St.3d 408, 2014-Ohio-812, 7 N.E.3d 1173, ¶ 8.  In *Davis*, however, the court explained the abuse of discretion standard that applies in child custody proceedings as follows:

> The standard for abuse of discretion was laid out in the leading case of *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, but applied to custody cases in *Bechtol v. Bechtol* (1990), 49 Ohio St.3d 21, 550 N.E.2d 178, syllabus:

> "Where an award of custody is supported by a substantial amount of credible and competent evidence, such an award will not be reversed as being against the weight of the evidence by a reviewing court. (*Trickey v.*

*Trickey* [1952], 158 Ohio St. 9, 47 O.O. 481, 106 N.E.2d 772, approved and followed.)"

The reason for this standard of review is that the trial judge has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page. As we stated in *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80-81, 10 OBR 408, 410-412, 461 N.E.2d 1273, 1276-1277:

"The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony. * * *

"* * * A reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court. A finding of an error in law is a legitimate ground for reversal, but a difference of opinion on credibility of witnesses and evidence is not. The determination of credibility of testimony and evidence must not be encroached upon by a reviewing tribunal, especially to the extent where the appellate court relies on unchallenged, excluded evidence in order to justify its reversal."

This is even more crucial in a child custody case, where there may be much evident in the parties' demeanor and attitude that does *not* translate to the record well.

*Id.* at 418-419.

{¶68} Accordingly, reviewing courts should afford great deference to

trial court child custody decisions. *A.L.P.* at ¶ 16; *E.W.* at ¶ 19, citing *Pater*

*v. Pater*, 63 Ohio St.3d 393, 396, 588 N.E.2d 794 (1992).  Additionally,

because child custody issues involve some of the most difficult and

agonizing decisions that trial courts are required to decide, courts must have

wide latitude to consider all of the evidence, and appellate courts should not

disturb a trial court's judgment absent an abuse of discretion.  *See Davis*, 77

Ohio St.3d 418; *Bragg v. Hatfield*, 152 Ohio App.3d 174, 2003-Ohio-1441,

787 N.E.2d 44, ¶ 24 (4th Dist.); *Hinton v. Hinton*, 4th Dist. Washington No.

02CA54, 2003-Ohio-2785, ¶ 9; *Ferris v. Ferris*, 4th Dist. Meigs No. 02CA4,

2003-Ohio-1284, ¶ 20.  "In proceedings involving the custody and welfare

of children the power of the trial court to exercise discretion is peculiarly

important.  The knowledge obtained through contact with and observation of

the parties and through independent investigation can not be conveyed to a

reviewing court by printed record." *Trickey*, 158 Ohio St. 9, at 13.

{¶69} Thus, this standard of review does not permit us to reverse a

trial court's decision if we simply disagree with it.  We may, however,

reverse a trial court's custody decision if the court made an error of law, if

its decision is unreasonable, arbitrary, or unconscionable, or if substantial

competent and credible evidence fails to support it.  *Davis*, 77 Ohio St.3d

415, at 418-419, 421 (explaining "abuse of discretion standard" and stating

that courts will not reverse custody decisions as against the manifest weight

of the evidence if substantial competent and credible evidence supports it, courts must defer to fact-finder, courts may reverse upon error of law, and trial court has broad discretion in custody matters).

{¶70} We additionally note that courts generally have applied the preponderance-of-the-evidence standard to trial court decisions granting a party legal custody of a child. *In re R.A.*, 2nd Dist. Montgomery No. 28806, 2020-Ohio-4846, 2020 WL 5989210, ¶ 41, citing *In re R.H.B., L.M.B., and L.M.B.*, 2d Dist. Clark Nos. 2015-CA-12, 2015-CA-14, 2016-Ohio-729, ¶ 7, and *In re A.W.*, 2d Dist. Montgomery No. 21309, 2006-Ohio-2103, ¶ 6. "A 'preponderance of the evidence' is 'evidence which is of greater weight or more convincing than the evidence which is offered in opposition to it.' " *In re B.P.*, 191 Ohio App.3d 518, 2010-Ohio-6458, 946 N.E.2d 818, ¶ 43 (4th Dist.), quoting Black's Law Dictionary 1182 (6th Ed.1998).

## LEGAL CUSTODY FRAMEWORK

{¶71} Once a trial court adjudicates a child abused, neglected, or dependent, R.C. 2151.353(A)(3) authorizes the court to "[a]ward  legal custody of the child to either parent or to any other person who, prior to the dispositional hearing, files a motion requesting legal custody of the child or is identified as a proposed legal custodian in a complaint or motion filed prior to the dispositional hearing by any party to the proceedings."

{¶72} R.C. 3109.04(F)(1) specifies the best interest factors courts must consider when determining whether to award legal custody to a party requesting it. *A.L.P.* at ¶ 17, citing *E.W.* at ¶ 20; R.C. 2151.23(F)(1); *In re Poling*, 64 Ohio St.3d 211, 594 N.E.2d 589 (1992), paragraph two of the syllabus ("[w]hen a juvenile court makes a custody determination under R.C. 2151.353, it must do so in accordance with R.C. 3109.04"); *Pryor*, 86 Ohio App.3d at 333, fn.4 (stating that a trial court applies the same best interest standard in child custody disputes originating from a divorce and originating from a neglect, dependency, abuse complaint). Those factors are as follows:

> (a) The wishes of the child's parents regarding the child's care;
>
> (b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;
> (c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;
> (d) The child's adjustment to the child's home, school, and community;
> (e) The mental and physical health of all persons involved in the situation;
> (f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;

(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;

(h) Whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to [certain specified criminal offenses];

(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state.

{¶73} In the case at bar, we do not believe the trial court abused its discretion by placing Ca.S. in the paternal grandparents' legal custody. With respect to the factors listed above, Appellant obviously wishes for the child to be returned to her custody. The court did not interview the child, as the child is too young to express her wishes. The paternal grandparents have been providing for Ca.S.'s needs and the child appears well-adjusted to their home. Appellant interacted appropriately with Ca.S. during visits, but Appellant did not establish that she would remain sober for the foreseeable future so as to be able to provide Ca.S. with a permanently safe, stable home and continued appropriate interactions free from drug abuse. Appellant engaged in mental health counseling and received drug abuse treatment. However, she continued to relapse throughout the pendency of the case. None of the other factors are relevant in the case at bar.

{¶74} The preponderance of the evidence shows that Appellant has not established a stable, safe, and permanent home for Ca.S. where the child will be free from the harm associated with drug abuse. Instead, the evidence shows that Appellant has been in a struggle to gain long-term control of her drug addiction since Ca.S.'s birth in 2016. Appellant has had bouts of sobriety but while the case was pending Appellant relapsed three times: twice in 2019 and once in August 2020. The trial court could have reasonably determined that Appellant's lengthy history of substance abuse, coupled with her periodic relapses, shows that Ca.S. would not experience a safe and nurturing upbringing if returned to Appellant's custody. While we do not doubt that Appellant deeply loves Ca.S., Appellant sadly has not sufficiently overcome her drug addiction so as to provide a safe place for Ca.S.

{¶75} Accordingly, based upon the foregoing reasons, we overrule Appellant's second assignments of error.

CONCLUSION

{¶76} Having overruled all of Appellant's assignments of error, we affirm the trial court's judgment.

**JUDGMENT AFFIRMED**.

# JUDGMENT ENTRY

It is ordered that the JUDGMENT BE AFFIRMED and that costs be assessed to Appellant.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Pickaway County Common Pleas Court, Juvenile Division to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J. and Wilkin, J., Concur in Judgment and Opinion.

For the Court,

_____
Jason P. Smith
Presiding Judge

## NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**