**[Cite as In re C.B., 2024-Ohio-1332.]**

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
HIGHLAND COUNTY

|  |  |  |
|---|---|---|
|  | : |  |
| IN THE MATTER OF | : | CASE NO. 23CA17 |
|  |  | 23CA18 |
| C.B. AND M.B. | : | 23CA19 |
|  |  | 23CA20 |
| DEPENDENT CHILDREN. | : |  |
|  |  | DECISION & JUDGMENT ENTRY |
|  | : |  |

_____

APPEARANCES:

Steven H. Eckstein, Washington Court House, Ohio, for Appellant.

Anneka P. Collins, Highland County Prosecuting Attorney, and
Molly Bolek, Highland County Assistant Prosecuting Attorney,
Hillsboro, Ohio, for Appellee.

_____
CIVIL CASE FROM COMMON PLEAS COURT, JUVENILE DIVISION
DATE JOURNALIZED:4-2-24
ABELE, J.

{¶1} This is a consolidated appeal from a Highland County Common Pleas Court, Juvenile Division, judgment that granted Highland County Department of Job and Family Services, Children Services Division, appellee herein, permanent custody of five-year-old C.B. and two-year-old M.B.

{¶2} Appellants, the children's biological parents, raise the following assignment of error:

> "THE TRIAL COURT'S GRANT OF PERMANENT
> CUSTODY TO THE HIGHLAND COUNTY JOBS AND
> FAMILY SERVICES CHILDREN'S DIVISION WAS
> AGAINST THE MANIFEST WEIGHT OF THE

EVIDENCE."

{¶3} On May 3, 2021, appellee filed a complaint that alleged the two children are abused, neglected, "and/or" dependent children. The complaint alleged that on March 18, 2021, appellee learned that the mother, about to give birth to a child, had not had any prenatal care and had been in labor for about one day. The mother indicated that Fayette County had removed her other children from her custody due to a lack of running water in the home. The caseworker contacted Fayette County and learned that the children had been removed due to methamphetamine use. After the mother gave birth, the newborn's cord blood tested positive for methamphetamine.

{¶4} On March 24, 2021, a caseworker visited the family's home, but was not able to make contact. This caseworker went to the home a second time on that date and again could not make contact.

{¶5} On March 25, 2021, the caseworker asked law enforcement officers to conduct a welfare check. The officers reported that they were unable to contact the family.

{¶6} On March 29, 2021, the caseworker and a police officer visited the home, and this time, they contacted the family. The mother admitted that she had used methamphetamine with the father and in the children's presence. Appellants submitted to random drug screens and mother's test returned positive for

methamphetamine, and father's test returned positive for methamphetamine, cocaine, and Tramadol. The caseworker "completed a safety plan with paternal grandmother."

{¶7} On April 15, 2021, a caseworker visited the family and conducted another round of drug screens. Appellants tested positive for methamphetamine and the father also tested positive for THC.

{¶8} Two weeks later, a caseworker attempted to visit the paternal grandmother's home but could not make contact. The caseworker then visited appellants' home. At first, no one answered. The caseworker, however, observed a car in the driveway that contained car seats. The caseworker then drove to a location where she could see the home and "law enforcement was contacted due to concerns that the safety plan was not being followed." While waiting, the caseworker observed appellants "walking out to the car with the children." Appellants reported that "they only had the children for a few hours" because the paternal grandmother had been at a doctor's appointment.

{¶9} Consequently, the agency requested the court to grant it emergency temporary custody of the children or enter another appropriate disposition. Also on May 3, 2021, the agency filed a motion for emergency temporary custody of the children, which the trial court granted.

{¶10} On June 15, 2021, the trial court adjudicated the

children dependent and dismissed the abuse and neglect allegations. The court also placed the children in appellee's temporary custody for a one-year period.

{¶11} Nine months later, on April 18, 2022, appellee filed a permanent-custody motion. Appellee later amended this motion to request a six-month extension of temporary custody. The trial court granted appellee's motion.

{¶12} On October 12, 2022, appellee filed a second permanent-custody motion. As with the first permanent-custody motion, appellee also later amended this motion to request an extension of temporary custody so that appellee could conduct a home study for a potential placement. The trial court granted this motion and continued the children in appellee's temporary custody.

{¶13} On April 27, 2023, appellee filed a third and final permanent-custody motion. At the hearing, the mother testified, as if on cross-examination, that she has not completed a drug treatment program. She agreed she tested positive on 19 of the 20 drug screens that she submitted throughout the pendency of the case and she is "worse off now than when" the children initially were removed from her care.

{¶14} The father likewise testified as if on cross-examination and stated that he did not complete a drug treatment program and he tested positive for drugs on 19 of the 20 drug

screens.

{¶15} Visitation monitor Taylor Ball testified that appellants attended 107 of 111 visits and the visits went well. Ball explained that the children appeared to be bonded to appellants.

{¶16} The children's foster father testified that the children lived in his home since April 30, 2021. He stated that he and his wife are interested in adopting the children.

{¶17} Rebecca Souther testified that she has been the family's caseworker since the children's May 2021 removal. She explained that the case plan required appellants to complete drug and alcohol assessments, to complete mental health assessments, and to maintain stable housing and employment. Souther stated that neither parent completed a drug treatment program or a mental health assessment.

{¶18} Caseworker Souther agreed that appellants' visits with the children have been appropriate. She also reported that the children are doing well in the foster home and seem to be bonded to the foster family.

{¶19} Caseworker Souther also stated that mother identified two potential placements for the children. The first placement "back[ed] out," and the second placement did not have the home study approved.

{¶20} The mother testified again on direct examination and

reported that she (1) currently stays "between hotels and family," (2) has been employed as a nursing assistant for 13 years, (3) is enrolled in an online drug treatment program, (4) continues to test positive for drugs, (5) is enrolled in a mental health program through the same online provider, and (6) has not entered an inpatient treatment center due to the financial costs. The father testified that he did not enter a treatment program because he cannot "make" himself "do it."

{¶21} On September 13, 2023, the trial court granted appellee permanent custody of the two children. The court found that the children have been in appellee's temporary custody for 12 or more months of a consecutive 22-month period and that placing the children in appellee's permanent custody is in their best interests.

{¶22} With respect to the children's best interests, the court found that appellants have maintained appropriate contact with the children. However, the children are bonded with the foster family, and the foster parents are willing to adopt both children. The guardian ad litem also recommended that the court grant appellee permanent custody of the children. The caseworker stated that no viable relative placements exist and that the children are doing well in their current placements. Also, appellants are unable or unwilling to provide the children with a legally secure permanent placement. They currently

reside either in hotels or with family members and remain
addicted to drugs and continue to test positive.

**{¶23}** The trial court explained:

> This case presents yet another unfortunate example
> of parents being unwilling to make the right choices and
> sacrifices to reunify with their children. They have
> chosen their respective illegal drug consumption and
> unwillingness to provide a stable home for the children
> over reunifying with them. Simply visiting is not
> enough.

The court did not believe that granting appellants more time
would be in the children's best interests: "To grant additional
time to the parents for reunification is only delaying what is
in the best interest of the children." The court did not
believe that appellants' efforts would be any different if it
granted them more time. Consequently, the court granted
appellee permanent custody of the two children. These appeals
followed.

**{¶24}** In their combined and sole assignment of error,
appellants assert that the trial court's decision is against the
manifest weight of the evidence. Specifically, they contend
that the trial court could not have formed a firm belief that
placing the children in appellee's permanent custody is in their
best interests when the mother was unable to quit her job to
enter inpatient drug treatment and was subject to a $350 monthly
child support obligation. Appellants assert that the mother's
"recovery from drugs was too difficult to manage, she could not

enter inpatient drug treatment as it required her to quit her job and then she could not pay her child support."

**{¶25}** Appellants additionally fault the trial court for failing to understand "what drug addiction is." Appellants charge that "[t]o call it a habit and the parents willingly using and choosing drugs over their children is not consistent with any drug addiction theory." Appellants contend that the trial court should have denied appellee's request for permanent custody and, instead, should have required the agency to file a new complaint to start a new two-year period to allow them to continue to work on their case plan.

A

**{¶26}** Generally, a reviewing court will not disturb a trial court's permanent custody decision unless the decision is against the manifest weight of the evidence. *E.g., In re B.E.*, 4th Dist. Highland No. 13CA26, 2014-Ohio-3178, ¶ 27; *In re R.S.*, 4th Dist. Highland No. 13CA22, 2013-Ohio-5569, ¶ 29; *accord In re Z.C.*, Slip Op., 2023-Ohio-4703, ¶ 1.

> "Weight of the evidence concerns 'the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.'"

*Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 12, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting Black's Law Dictionary 1594 (6th Ed.1990).

**{¶27}** When an appellate court reviews whether a trial court's permanent custody decision is against the manifest weight of the evidence, the court "'"weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered."'" *Eastley* at ¶ 20, quoting *Tewarson v. Simon*, 141 Ohio App.3d 103, 115, 750 N.E.2d 176 (9th Dist.2001), quoting *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983); *accord In re Pittman*, 9th Dist. Summit No. 20894, 2002-Ohio-2208, ¶¶ 23-24. We further observe, however, that issues relating to the credibility of witnesses and the weight to be given the evidence are primarily for the trier of fact. As the court explained in *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984):

> The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the

credibility of the proffered testimony.

{¶28} Moreover, deferring to the trial court on matters of credibility is "crucial in a child custody case, where there may be much evident in the parties' demeanor and attitude that does not translate to the record well (Emphasis sic)." *Davis v. Flickinger*, 77 Ohio St.3d 415, 419, 674 N.E.2d 1159 (1997). *Accord In re Christian*, 4th Dist. No. 04CA 10, 2004-Ohio-3146, ¶ 7.

{¶29} The question that an appellate court must resolve when reviewing a permanent custody decision under the manifest weight of the evidence standard is "whether the juvenile court's findings * * * were supported by clear and convincing evidence." *In re K.H.*, 119 Ohio St.3d 538, 2008-Ohio-4825, 895 N.E.2d 809, ¶ 43. "Clear and convincing evidence" is:

> the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal.

*In re Estate of Haynes*, 25 Ohio St.3d 101, 103-04, 495 N.E.2d 23 (1986). In determining whether a trial court based its decision upon clear and convincing evidence, "a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *State v. Schiebel*, 55 Ohio St.3d 71, 74, 564 N.E.2d 54

(1990); *accord In re Holcomb*, 18 Ohio St.3d 361, 368, 481 N.E.2d 613 (1985), citing *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954) ("Once the clear and convincing standard has been met to the satisfaction of the [trial] court, the reviewing court must examine the record and determine if the trier of fact had sufficient evidence before it to satisfy this burden of proof."); *In re Adoption of Lay*, 25 Ohio St.3d 41, 42-43, 495 N.E.2d 9 (1986). *Cf. In re Adoption of Masa*, 23 Ohio St.3d 163, 165, 492 N.E.2d 140 (1986) (whether a fact has been "proven by clear and convincing evidence in a particular case is a determination for the [trial] court and will not be disturbed on appeal unless such determination is against the manifest weight of the evidence").

{¶30} Thus, if a children services agency presented competent and credible evidence upon which the trier of fact reasonably could have formed a firm belief that permanent custody is warranted, the court's decision is not against the manifest weight of the evidence. *In re R.M.*, 2013-Ohio-3588, 997 N.E.2d 169, ¶ 62 (4th Dist.); *In re R.L.*, 2nd Dist. Greene Nos. 2012CA32 and Greene Nos. 2012CA33, 2012-Ohio-6049, ¶ 17, quoting *In re A.U.*, 2nd Dist. Montgomery No. 22287, 2008-Ohio-187, ¶ 9 ("A reviewing court will not overturn a court's grant of permanent custody to the state as being contrary to the manifest weight of the evidence 'if the record contains

competent, credible evidence by which the court could have formed a firm belief or conviction that the essential statutory elements * * * have been established.' ").

{¶31} Once a reviewing court finishes its examination, the judgment may be reversed only if it appears that the fact-finder, when resolving the conflicts in evidence, " 'clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered.' " *Thompkins*, 78 Ohio St.3d at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). A reviewing court should find a trial court's permanent custody decision against the manifest weight of the evidence only in the " 'exceptional case in which the evidence weighs heavily against the [decision].' " *Id.*, quoting *Martin*, 20 Ohio App.3d at 175, 485 N.E.2d 717; *accord State v. Lindsey*, 87 Ohio St.3d 479, 483, 721 N.E.2d 995 (2000).

B

{¶32} We recognize that "parents' interest in the care, custody, and control of their children 'is perhaps the oldest of the fundamental liberty interests recognized by th[e United States Supreme] Court.' " *In re B.C.*, 141 Ohio St.3d 55, 2014-Ohio-4558, 21 N.E.3d 308, ¶ 19, quoting *Troxel v. Granville*, 530 U.S. 57, 65, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000). Indeed, the right to raise one's "child is an 'essential' and 'basic' civil

right." *In re Murray*, 52 Ohio St.3d 155, 157, 556 N.E.2d 1169 (1990); *accord In re Hayes*, 79 Ohio St.3d 46, 48, 679 N.E.2d 680 (1997); *see Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982) ("natural parents have a fundamental right to the care and custody of their children"). Thus, "parents who are 'suitable' have a 'paramount' right to the custody of their children." *B.C.* at ¶ 19, quoting *In re Perales*, 52 Ohio St.2d 89, 97, 369 N.E.2d 1047 (1977), citing *Clark v. Bayer*, 32 Ohio St. 299, 310 (1877); Murray, 52 Ohio St.3d at 157, 556 N.E.2d 1169.

{¶33} A parent's rights, however, are not absolute. *In re D.A.*, 113 Ohio St.3d 88, 2007-Ohio-1105, 862 N.E.2d 829, ¶ 11. Rather, " 'it is plain that the natural rights of a parent * * * are always subject to the ultimate welfare of the child, which is the polestar or controlling principle to be observed.' " *In re Cunningham*, 59 Ohio St.2d 100, 106, 391 N.E.2d 1034 (1979), quoting *In re R.J.C.*, 300 So.2d 54, 58 (Fla. App. 1974). Thus, the State may terminate parental rights when a child's best interest demands such termination. *D.A.* at ¶ 11.

{¶34} Before a court may award a children services agency permanent custody of a child, R.C. 2151.414(A)(1) requires the court to hold a hearing. The primary purpose of the hearing is to allow the court to determine whether the child's best interests would be served by permanently terminating the

parental relationship and by awarding permanent custody to the agency. *Id.* Additionally, when considering whether to grant a children services agency permanent custody, a trial court should consider the underlying purposes of R.C. Chapter 2151: "to care for and protect children, 'whenever possible, in a family environment, separating the child from the child's parents only when necessary for the child's welfare or in the interests of public safety.' " *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816, ¶ 29, quoting R.C. 2151.01(A).

C

**{¶35}** A children services agency may obtain permanent custody of a child by (1) requesting it in the abuse, neglect or dependency complaint under R.C. 2151.353, or (2) filing a motion under R.C. 2151.413 after obtaining temporary custody. In this case, appellee sought permanent custody by filing a motion under R.C. 2151.413. When an agency files a permanent custody motion under R.C. 2151.413, R.C. 2151.414 applies. R.C. 2151.414(A).

**{¶36}** R.C. 2151.414(B)(1) permits a trial court to grant permanent custody of a child to a children services agency if the court determines, by clear and convincing evidence, that the child's best interest would be served by the award of permanent custody and that one of the following conditions applies:

> (a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing

agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.

(b) The child is abandoned.

(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.

(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.

(e) The child or another child in the custody of the parent or parents from whose custody the child has been removed has been adjudicated an abused, neglected, or dependent child on three separate occasions by any court in this state or another state.

{¶37} Thus, before a trial court may award a children services agency permanent custody, it must find (1) that one of the circumstances described in R.C. 2151.414(B)(1) applies, and (2) that awarding the children services agency permanent custody would further the child's best interest.

{¶38} In the case at bar, the trial court found that the children had been in the agency's temporary custody for more than 12 months of a consecutive 22-month period, and thus, that R.C. 2151.414(B)(1)(d) applies. Appellants do not challenge this finding.

{¶39} R.C. 2151.414(D) directs a trial court to consider "all relevant factors," as well as specific factors, to determine whether a child's best interest will be served by granting a children services agency permanent custody. The

listed factors include: (1) the child's interaction and interrelationship with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the child's wishes, as expressed directly by the child or through the child's guardian ad litem, with due regard for the child's maturity; (3) the child's custodial history; (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; and (5) whether any factors listed under R.C. 2151.414(E)(7) to (11) apply.

{¶40} Courts that are determining whether a grant of permanent custody to a children services agency will promote a child's best interest must consider "all relevant [best interest] factors," as well as the "five enumerated statutory factors." *C.F.* at ¶ 57, citing *In re Schaefer*, 111 Ohio St.3d 498, 2006-Ohio-5513, 857 N.E.2d 532, ¶ 56; *accord In re C.G.*, 9th Dist. Summit Nos. 24097 and Summit Nos. 24099, 2008-Ohio-3773, ¶ 28; *In re N.W.*, 10th Dist. Franklin Nos. 07AP-590 and Franklin Nos. 07AP-591, 2008-Ohio-297, ¶ 19.  However, none of the best interest factors are entitled to "greater weight or heightened significance." *C.F.* at ¶ 57.  Instead, the trial court considers the totality of the circumstances when making its best interest determination.  *In re K.M.S.*, 3rd Dist. Marion

Nos. 9-15-37, 9-15-38, and Marion Nos. 9-15-39, 2017-Ohio-142, ¶ 24; *In re A.C.*, 9th Dist. Summit No. 27328, 2014-Ohio-4918, ¶ 46. In general, "[a] child's best interest is served by placing the child in a permanent situation that fosters growth, stability, and security." *In re C.B.C.*, 4th Dist. Lawrence Nos. 15CA18 and Lawrence Nos. 15CA19, 2016-Ohio-916, ¶ 66, citing *In re Adoption of Ridenour*, 61 Ohio St.3d 319, 324, 574 N.E.2d 1055 (1991).

**{¶41}** In the case sub judice, appellants do not explicitly challenge the trial court's findings regarding one of the best interest factors. Instead, they generally assert that the trial court could not have "reasonably form[ed] a firm belief that permanent custody is in the best interest of the children." Appellants assert that the trial court placed improper reliance on their drug addiction and failed to recognize that the mother could not enter a drug treatment program due to her full-time employment and her monthly child support obligation.

**{¶42}** Appellee, however, contends that the record contains clear and convincing evidence to support the trial court's decision that placing the children in its permanent custody is in their best interests. We agree with appellee.

Children's Interactions and Interrelationships

**{¶43}** The evidence shows that appellants share a bond with the children and dearly love them. Appellants consistently

visited the children and had telephone contact with them outside of their supervised visitations.

{¶44} The children are doing well with the foster family and appear bonded to the family. The foster parents intend to adopt the children if granted the opportunity.

### Children's Wishes

{¶45} The trial court noted that the children's guardian ad litem recommended that the court place the children in appellee's temporary custody. *C.F.* at ¶ 55 (R.C. 2151.414 "unambiguously gives the trial court the choice of considering the child's wishes directly from the child or through the guardian ad litem"); *In re S.M.*, 4th Dist. Highland No. 14CA4, 2014-Ohio- 2961, ¶ 32 (recognizing that R.C. 2151.414 permits juvenile courts to consider a child's wishes as child directly expresses or through the GAL).

### Custodial History

{¶46} The children have been in appellee's temporary custody since May 3, 2021. As of the date that appellee filed its permanent custody motion, the children had been in appellee's temporary custody for almost two years. Thus, the children have been in appellee's temporary custody for 12 or more months of a consecutive 22-month period.

### Legally Secure Permanent Placement

{¶47} "Although the Ohio Revised Code does not define the

term, 'legally secure permanent placement,' this court and others have generally interpreted the phrase to mean a safe, stable, consistent environment where a child's needs will be met."  *In re M.B.*, 4th Dist. Highland No. 15CA19, 2016-Ohio-793, ¶ 56, citing *In re Dyal*, 4th Dist. Hocking No. 01CA12, 2001 WL 925423, *9 (Aug. 9, 2001) ("legally secure permanent placement" means a "stable, safe, and nurturing environment"); *see also In re K.M.*, 10th Dist. Franklin Nos. 15AP-64 and 15AP-66, 2015-Ohio-4682, ¶ 28 (legally secure permanent placement requires more than a stable home and income, but also requires an environment that will provide for child's needs); *In re J.H.*, 11th Dist. Lake No. 2012-L-126, 2013-Ohio-1293, ¶ 95 (mother was unable to provide legally secure permanent placement when she lacked physical and emotional stability and father was unable to do so when he lacked grasp of parenting concepts); *In re J.W.*, 171 Ohio App.3d 248, 2007-Ohio-2007, 870 N.E.2d 245, ¶ 34 (10th Dist.) (Sadler, J., dissenting) (legally secure permanent placement means "a placement that is stable and consistent"); Black's Law Dictionary 1354 (6th Ed. 1990) (defining "secure" to mean, in part, "not exposed to danger; safe; so strong, stable or firm as to insure safety"); *id.* at 1139 (defining "permanent" to mean, in part, "[c]ontinuing or enduring in the same state, status, place, or the like without fundamental or marked change, not subject to fluctuation, or alteration, fixed or intended to

be fixed; lasting; abiding; stable; not temporary or transient"). Thus, "[a] legally secure permanent placement is more than a house with four walls. Rather, it generally encompasses a stable environment where a child will live in safety with one or more dependable adults who will provide for the child's needs." *M.B.* at ¶ 56.

{¶48} In the case at bar, the evidence shows that the children need a legally secure permanent placement and that they cannot achieve this type of placement without granting appellee permanent custody. Appellants have not successfully completed a drug treatment program despite nearly two years of agency involvement. The father does not believe that he can "make" himself "do it." The mother has not taken adequate steps to try to overcome her drug addiction and admitted that, at the time of the permanent custody hearing, she was "worse" than she had been when appellee first removed the children from her care. While she recently started to engage in an online treatment program, she continued to test positive for drugs. The trial court believed that the mother's past conduct and her six-year history of abusing drugs are predictors of her future conduct and did not bode well for the children. *See In re West*, 4th Dist. Athens No. 05CA4, 2005-Ohio-2977, ¶ 28, citing *In re A.S.*, 12th Dist. Butler Nos. CA2004-07-182 and CA2004-08-185, 2004-Ohio-6323, ¶ 37 ("Past history is often the best predictor of future

conduct. While surely people can change, the facts do not indicate that [the biological parents] have the motivation or ability to follow through and do what is necessary to regain custody of their child."); *In re Vaughn*, 4th Dist. Adams No. 00CA692, 2000 WL 33226177, *7 (Dec. 6, 2000) ("To further the interests of the children, the court must consider any evidence available to it, including a parent's pattern of conduct. Some of the most reliable evidence for the court to consider is the past history of the children and the parents."); *see also In re Brown*, 60 Ohio App.3d 136, 139, 573 N.E.2d 1217 (1st Dist.1989) (stating that the mother's "past parenting history and her ability to comply with prior reunification plans regarding her other children were relevant considerations in the juvenile court's dispositional determination" to award a children services agency permanent custody).

**{¶49}** Thus, during the nearly two years that this case had been pending, appellants failed to conquer their drug addiction so as to give appellee assurance that, if the court returned the children to their custody, they would not continue to abuse drugs. Appellants have an unfortunate and lengthy history of substance abuse and did not demonstrate that they would be capable or willing to try to remain drug-free for their children's health, safety, and welfare.

**{¶50}** Appellants nevertheless assert that the trial court

should have afforded them two more years to try to conquer their addiction. As we have recognized in the past, however, the permanent custody statutes do not contemplate leaving children in custodial limbo for an extended period of time while a parent attempts to demonstrate that the parent is capable and willing to provide the children with a legally secure permanent placement. See R.C. 2151.415(D)(4) (prohibiting court from granting "an agency more than two extensions of temporary custody" and from ordering "an existing temporary custody order to continue beyond two years after the date on which the complaint was filed or the child was first placed into shelter care, whichever date is earlier, regardless of whether any extensions have been previously ordered pursuant to division (D) of this section"). Additionally, keeping children in limbo is not in their best interests. *In re B.C.*, 141 Ohio St.3d 55, 2014-Ohio-4558, 21 N.E.3d 308, ¶ 20, quoting *Lehman v. Lycoming Cty. Children's Servs. Agency*, 458 U.S. 502, 513-514, 102 S.Ct. 3231, 73 L.Ed.2d 928 (1982) (" 'There is little that can be as detrimental to a child's sound development as uncertainty over whether he is to remain in his current "home," under the care of his parents or foster parents, especially when such uncertainty is prolonged.' ").

{¶51} We recognize that drug addiction is a "powerful and difficult" force to overcome. *In re Ca.S.*, 4th Dist. Pickaway

No. 21CA10, 2021-Ohio-3874, ¶ 65.  "However, we do not believe that it is in a child's best interest to continue the child in custodial limbo — or to return a child to a parent's care — when the parent is engaged in a long-term fight against drug addiction."  *Id.*

{¶52} In sum, we agree with the trial court's conclusion that the children cannot be placed in appellants' custody, and the children desperately need "stability and security * * * to become productive and well-adjusted members of the adult community."  *Ridenour*, 61 Ohio St.3d at 324.  Their best interests will be "served by placing them in a permanent situation that fosters growth, stability, and security."  *In re C.B.C.*, 4th Dist. Lawrence Nos. 15CA18 and 15CA19, 2016-Ohio-916, ¶ 66, citing *Ridenour*.

{¶53} The evidence also shows that the children enjoy a stable placement with the foster family.  The foster parents are interested in adopting the children, and the foster parents are able and willing to provide the children with the "stability and security" that they need "to become productive and well-adjusted members of the adult community."  *Ridenour*, 61 Ohio St.3d at 324.  The trial court could have quite reasonably determined that placing the children in appellee's permanent custody would give them the best opportunity to become productive members of society.  The trial court had no obligation to give appellants

more time to become drug-free or to return the children to their custody.

As this court often notes:

"* * * [A] child should not have to endure the inevitable to its great detriment and harm in order to give the * * * [parent] an opportunity to prove her suitability. To anticipate the future, however, is at most, a difficult basis for a judicial determination. The child's present condition and environment is the subject for decision not the expected or anticipated behavior of unsuitability or unfitness of the * * * [parent]. * * * The law does not require the court to experiment with the child's welfare to see if he will suffer great detriment or harm."

*In re W.C.J.*, 4th Dist. Jackson No. 14CA3, 2014-Ohio-5841, ¶ 48, quoting *In re Bishop*, 36 Ohio App.3d 123, 126, 521 N.E.2d 838 (5th Dist.1987). For all of these reasons, the trial court's decision is not against the manifest weight of the evidence.

{¶54} Accordingly, based upon the foregoing reasons, we overrule appellants' sole assignment of error and affirm the trial court's judgment.

JUDGMENT AFFIRMED.

JUDGMENT ENTRY

It is ordered that the appeal be affirmed and that appellee recover of appellants the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Highland County Common Pleas Court, Juvenile Division, to carry this judgment into execution.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. & Hess, J.: Concur in Judgment & Opinion

For the Court

BY:_____
Peter B. Abele, Judge

NOTICE TO COUNSEL

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.